STATE OF CONNECTICUT *v.* DONALD P. BROWN, JR.
(AC 26472)

DiPentima, Gruendel and Rogers, Js.

Argued September 15, 2006—officially released December 26, 2006

*Aaron Romano*, with whom, on the brief, was *Cynthia M. Fernandez-Romano*, for the appellant (defendant).

*David J. Smith*, assistant state's attorney, with whom, on the brief, was *Kevin T. Kane*, state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. In this appeal from the judgment of conviction following a jury trial, the defendant, Donald P. Brown, Jr., challenges the legality of his arrest. He also claims that, as a result of the illegality of his arrest, his subsequent written statement to the police should

have been suppressed. In the alternative, he argues that the written statement was tainted by an earlier involuntary statement. None of these claims was raised before the trial court. We affirm the judgment of conviction.

The jury reasonably could have found the following facts. On October 2, 2003, the defendant and two other individuals, all wearing masks to conceal their identities, entered the Nowhere Cafe in New London, demanded money at gunpoint from a cafe employee and left with $394. The defendant and the other two individuals then ran into a wooded area. At some point while in the wooded area, the defendant had control of the handgun used in the robbery. The police surrounded the defendant, and a police dog, Niko, was let loose to search for the defendant and other suspects. When Niko attempted to subdue him, the defendant shot the dog and was able to escape to his girlfriend's apartment.

While at his girlfriend's apartment, the defendant attempted to treat the wounds inflicted on him by the police dog. After about an hour and one half, the police arrived at the apartment. After questioning him and observing his dog bite wounds, the police arrested the defendant. Thereafter, the police took the defendant to a hospital where he stayed for about two hours. He was then taken to the police station where he was advised of his rights pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and where he provided the police with a written statement.

The state charged the defendant with robbery in the first degree and related counts arising from the robbery of the Nowhere Cafe and the subsequent shooting of the police dog.[1] Immediately prior to the start of evidence, the court heard and decided the defendant's

---

[1] The defendant was convicted of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), larceny in the fifth degree in violation of General Statutes § 53a-125a, interfering with an officer in violation of

two motions to suppress statements, granting one and denying the other. Following the jury's verdict of guilty on five charges, the court rendered judgment in accordance with the verdict and sentenced the defendant to eighteen years incarceration. This appeal followed.

I

The defendant claims, for the first time on appeal, that his arrest was illegal. He therefore seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Hamlin*, 90 Conn. App. 445, 449 n.4, 878 A.2d 374, cert. denied, 276 Conn. 914, 888 A.2d 86 (2005). Because the record is inadequate, the defendant cannot satisfy the first of the four prongs under *Golding*, and, accordingly, we decline to review his claim.

We disagree with the defendant's assertion that the evidence presented at the suppression hearing established the illegality of the defendant's arrest. In the

General Statutes § 53a-167a, unlawful discharge of a firearm in violation of General Statutes § 53-203, and criminal attempt to kill a police dog in violation of General Statutes (Rev. to 2003) § 53-247 (d) (now [e]) and § 53a-49 (a) (2). The court granted the defendant's motion for a judgment of acquittal on the charge of alteration of a firearm identification mark in violation of General Statutes § 29-36.

defendant's first motion to suppress, he argued that all of his statements should be suppressed because his pain and medical condition prevented him from making a knowing, intelligent and voluntary waiver of his rights. In his supplemental motion, the defendant argued that the statements he made at his girlfriend's apartment should be suppressed because he was subjected to custodial interrogation without having been given *Miranda* warnings. At the hearing on the defendant's two motions, two witnesses testified. George Potts, a New London police officer, testified as to the facts surrounding the latter motion. According to his testimony, the apartment was dimly lit when the police arrived, and there were three people in the apartment, one of whom was the defendant, who was lying under a sheet on a sofa. When Potts requested that the defendant remove the sheet covering his body, the defendant moved the sheet down to his waist but no farther. Potts, concerned for his safety as well as for that of the accompanying officers, removed the sheet. He observed an injury consistent with a dog bite on the defendant's right leg,[2] as well as makeshift tourniquets. Shortly thereafter, the defendant was arrested. At the conclusion of the hearing, the court granted the defendant's supplemental motion but denied the defendant's first motion to suppress.

In a challenge to the legality of an arrest, the inquiry is whether probable cause existed. "Probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that a [crime] has been committed." (Internal quotation marks omitted.) *State* v. *Dalzell*, 96 Conn. App. 515, 527, 901 A.2d 706, cert. granted on other grounds, 280 Conn. 914, 908 A.2d 539 (2006). The focus of the suppression

---

[2] Potts was a trained canine handler.

hearing was whether the statements made by the defendant were the product of a custodial interrogation. There was no motion, written or oral, that addressed the legality of the arrest. Neither the state nor the defendant made inquiry into the specifics of the arrest. Although the court found that the defendant was in custody for the purpose of requiring *Miranda* warnings, it made no findings regarding the timing or the existence of probable cause for the arrest. As a result, we conclude that the record lacks the necessary facts for appellate review of the merits of the defendant's claim. See, e.g., *State* v. *Brunetti*, 279 Conn. 39, 54, 901 A.2d 1 (2006) ("unless the defendant has satisfied the first *Golding* prong, that is, unless the defendant has demonstrated that the record is adequate for appellate review, the appellate tribunal will not consider the merits of the defendant's claim").

II

The defendant's second claim is that the statements he made subsequent to his arrest should be suppressed. In support of his claim, the defendant first argues that his statement in the police station should have been suppressed under the exclusionary rule as the fruit of an illegal arrest.[3] In light of our conclusion that the record is not adequate to review the legality of the arrest, we similarly dispose of this appurtenant claim without discussion. In the alternative, the defendant argues that his involuntary statement in the apartment rendered the *Miranda* warnings he was given in the police station ineffective and that his subsequent written statement should therefore be suppressed. We are not persuaded.

---

[3] The defendant also argues that, in addition to the statements he made at the police station, the bloody, torn clothing that the police seized from him, the bloody sneakers, and the photographs of his dog bite injuries, bloody towel, tourniquets and the injured dog should have been suppressed as a result of his arrest.

The following additional facts and procedural history are relevant to the defendant's claim. The record reflects that following the defendant's incriminatory statement in the apartment, he was arrested and transported to the hospital, where he was treated for his wounds. The defendant remained at the hospital for more than two hours, during which time he was observed to be calm, relaxed and speaking normally. Upon his discharge from the hospital, the defendant was transported to the police station, where he was booked and read his *Miranda* rights. The defendant still did not reveal any signs of discomfort. At the end of the booking process, the defendant was asked to provide a written statement, to which he agreed. At that point, he was again made aware of his *Miranda* rights, which he indicated that he understood and waived in writing.

The defendant does not challenge the court's finding that he received *Miranda* warnings prior to providing a written statement in the police station. Instead, citing *Missouri* v. *Seibert*, 542 U.S. 600, 124 S. Ct. 2601, 159 L. Ed. 2d 643 (2004), he claims that his involuntary statement at the apartment made those subsequent *Miranda* warnings ineffective for the written statement. We again must employ a *Golding* analysis of this claim because the defendant failed to raise this argument before the trial court.[4] Although the claim is reviewable because it alleges the violation of a fundamental right of constitutional magnitude and the record on this issue is adequate for review, we conclude that it does not meet the third prong of *Golding* because no constitutional violation clearly exists.

The facts of this case are readily distinguishable from those in *Seibert*, in which the police deliberately tried

---

[4] The basis for the motion to suppress this statement was solely that the defendant's injuries and medical treatment made it involuntary.

to adulterate the efficaciousness of *Miranda* warnings by interrogating in successive unwarned and warned phases. Id., 604–605. The police questioned the defendant for thirty to forty minutes without *Miranda* warning until she confessed. Id. Once the police had obtained the confession, they gave the defendant a twenty minute break, then read her the *Miranda* warnings and obtained a signed waiver of her rights. Id., 605. The police then resumed interrogation of the defendant, immediately confronting her with the incriminating statements she had given just before the warnings. Id. The United States Supreme Court held that the statements made by the defendant following the warning should have been suppressed. Id., 617. The court reasoned that it would "be unrealistic to treat two spates of integrated and proximately conducted questioning as independent interrogations subject to independent evaluation simply because *Miranda* warnings formally punctuate them in the middle." Id., 614. The court provided a list of factors to consider when determining whether *Miranda* warnings delivered midstream are effective, including the completeness and detail of the questions and answers in the first round of interrogation, the timing and setting of the first and the second rounds, and the degree to which the interrogator's questions treated the second round as continuous with the first. Id., 615.

Contrary to *Seibert,* in the present case, there was no evidence that the police employed such a deliberate strategy to obtain a confession without apprising the defendant of his rights. The police did not conduct a prolonged interrogation of the defendant in his apartment. The defendant was first taken to the hospital and only afterward was brought into the police station, where he was properly given *Miranda* warnings twice before providing his written statement. More than two hours had passed, the setting was different and the

defendant maintained a composed demeanor throughout. We therefore conclude that he was not subject to "integrated and proximately conducted questioning" such that would render the *Miranda* warnings nugatory. The court properly denied the defendant's motion to suppress his second statement.

The judgment is affirmed.

In this opinion the other judges concurred.