STATE OF CONNECTICUT *v.* KENNETH MULLINS
(SC 18097)

Rogers, C. J., and Katz, Palmer, Vertefeuille and Schaller, Js.

Argued April 16—officially released August 12, 2008

*Pamela S. Nagy*, special public defender, for the appellant (defendant).

*Nancy L. Chupak*, assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Joseph Valdes*, assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. The defendant, Kenneth Mullins, appeals from the judgment of conviction, rendered after a jury trial, of: (1) possession of narcotics with intent to sell

in violation of General Statutes § 21a-277 (a);[1] (2) possession of narcotics with intent to sell within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b);[2] and (3) possession of narcotics in violation of General Statutes § 21a-279 (a).[3] The defen-

[1] General Statutes § 21a-277 (a) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

[2] General Statutes § 21a-278a (b) provides: "Any person who violates section 21a-277 or 21a-278 by manufacturing, distributing, selling, prescribing, dispensing, compounding, transporting with the intent to sell or dispense, possessing with the intent to sell or dispense, offering, giving or administering to another person any controlled substance in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school, a public housing project or a licensed child day care center, as defined in section 19a-77, that is identified as a child day care center by a sign posted in a conspicuous place shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section 21a-277 or 21a-278. To constitute a violation of this subsection, an act of transporting or possessing a controlled substance shall be with intent to sell or dispense in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school, a public housing project or a licensed child day care center, as defined in section 19a-77, that is identified as a child day care center by a sign posted in a conspicuous place. For the purposes of this subsection, 'public housing project' means dwelling accommodations operated as a state or federally subsidized multifamily housing project by a housing authority, nonprofit corporation or municipal developer, as defined in section 8-39, pursuant to chapter 128 or by the Connecticut Housing Authority pursuant to chapter 129."

[3] General Statutes § 21a-279 (a) provides: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be

dant claims that the trial court improperly: (1) denied his motion to suppress the oral and written statements that he had made to the police; (2) permitted the police officers to testify that they had a valid legal reason for entering the defendant's home; and (3) denied the defendant's motion to disclose the identity of the confidential informant relied on by the police. The defendant also claims that his convictions of both possession of narcotics with intent to sell under § 21a-277 (a) and possession of narcotics under § 21a-279 (a) violate the guarantee against double jeopardy under the federal and state constitutions. We agree only with the defendant's double jeopardy claim, and we affirm the judgment in all other respects.

The record reflects the following undisputed facts and procedural history. On July 13, 2004, Stamford police officer Diedrich Hohn and seven other officers executed a search warrant for a residential property located at 33 Sheridan Street in Stamford. The warrant was supported by an affidavit attesting to information that had been provided by a confidential informant. The confidential informant had told the police that a person named "Kenny," later identified by the informant as the defendant, was selling heroin out of his home at 33 Sheridan Street. The search warrant affidavit described two controlled purchases of heroin from the defendant made by the confidential informant.

Hohn and his fellow officers arrived at the defendant's home on July 13, 2004, at approximately 7 p.m. to conduct the search. They entered through the front entry door of the row house apartment with weapons drawn and quickly swarmed through to secure the

both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

premises, yelling "police search warrant" and kicking in closed interior doors as they went. The defendant was found in an upstairs bedroom with his boyfriend, Dion McBride. As the men were being ordered to be handcuffed, Hohn saw the defendant throw a tissue to the floor. Both men were handcuffed and brought downstairs. Two other individuals who were present elsewhere in the house also were detained. Once the house had been secured, the police proceeded to search the bedroom. Evidence discovered in the search included a tissue on the floor containing eighteen bags of heroin, thirty bags of heroin found in a dresser drawer, approximately $900 in cash and a bank statement bearing the defendant's name. At the scene, under circumstances that are disputed, the defendant stated that the drugs were his and not McBride's. The defendant was then placed under arrest. At the police station, after receiving *Miranda* warnings,[4] the defendant wrote and signed a statement attesting that the heroin the police had found was his and that he had been selling it.

On the basis of the evidence discovered in the search, the defendant was charged in a long form information with: (1) possession of narcotics within intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b);[5] (2) possession of

[4] See *Miranda* v. *Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) ("[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed").

[5] General Statutes § 21a-278 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this

narcotics with intent to sell within 1500 feet of a public housing project in violation of § 21a-278a (b); and (3) possession of narcotics in violation of § 21a-279 (a). Prior to trial, the defendant filed: (1) a motion to suppress his oral and written statements to the police; (2) a motion in limine to prohibit witnesses from testifying that the police entry into the house had been pursuant to a search warrant; and (3) a motion to identify the confidential informant.

The trial court formally denied all three motions, but nonetheless precluded the state from eliciting testimony regarding the search warrant. See footnote 12 of this opinion and the accompanying text. During his jury trial, the defendant offered the defense that, although the narcotics were his, they were for his personal use and were not for sale. The jury found the defendant guilty of possession of narcotics and possession of narcotics with intent to sell within 1500 feet of a public housing project. The jury thereafter found the defendant not guilty of possession with intent to sell by a person who is not drug-dependent, but found him guilty of the lesser included offense of possession of narcotics with intent to sell. In accordance with the verdict, the trial court sentenced the defendant to a total effective sentence of five years imprisonment with five years special parole.[6] The defendant thereafter appealed from the trial court's judgment to the Appellate Court, and

subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years, or (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

[6] The defendant was sentenced as follows: Three years imprisonment for possession of narcotics with intent to sell within 1500 feet of a public housing project to be served consecutively with two years imprisonment for possession of narcotics with intent to sell; and two years imprisonment for possession of narcotics, to be served concurrently with the effective sentence of five years of imprisonment on the first two convictions.

we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the defendant makes the following claims: (1) the trial court improperly denied his motion to suppress his oral and written statements because they were products of coercion, and because the oral statement was made without prior *Miranda* warnings; (2) the trial court improperly allowed the police to testify that they had a valid legal reason to enter the defendant's house despite the fact that this testimony was irrelevant and unfairly prejudicial; (3) the trial court improperly denied his motion to disclose the identity of the confidential informant despite the facts that the state had failed to invoke its privilege to protect the informant's identity and that the information may have been necessary for his defense; and (4) the convictions of possession of narcotics with intent to sell and possession of narcotics violate the guarantee against double jeopardy under the state and federal constitutions. The state disputes all of the defendant's claims, with the exception of the double jeopardy claim, which the state concedes. We agree with the state.

I

We first turn to the defendant's claims relating to whether the trial court improperly denied his motion to suppress his oral statement at the house and his written statement at the police station. First, the defendant asserts that both his oral and written statements were involuntary because they were the product of police coercion. Second, he contends that his oral statement was obtained illegally because it was the result of a custodial interrogation that occurred before he had been given *Miranda* warnings. Related to this second claim, although he does not dispute that he had received *Miranda* warnings before giving his later written statement, he also contends that the written statement was

inadmissible "because the taint from the first illegal confession had not dissipated" by the time the written statement was taken. The state contends in response, inter alia, that the trial court properly denied the defendant's motion because the defendant did not preserve the issue of coercion and he had not been subjected to coercion or custodial interrogation with respect to either his oral or written statement.[7] We agree with the state.

The record reveals the following additional facts and procedural history that are relevant to our resolution of these claims. At the hearing on the motion to suppress, Hohn offered the following testimony about the circumstances surrounding the defendant's oral statement. After Hohn found drugs in the defendant's bedroom pursuant to the search, he proceeded downstairs to arrest the defendant. Hohn first testified that he had told the defendant what the officers found in the bedroom, and then the defendant indicated that he wished to speak to Hohn. When later questioned, however, Hohn stated that he had planned to inform the defendant of his findings, but before he could do so, the defendant called Hohn over to speak with him. Hohn specified that the defendant had "motioned with his head, and then said that he wanted to speak with me," and that Hohn had not said anything before the defendant had motioned to him. According to Hohn, the defendant then stated that "all that stuff in that room is mine and not my boyfriend . . . McBride's." Hohn asked the defendant if he was willing to give a voluntary statement, to which the defendant responded affirmatively. The defendant then was transported to the Stamford police department, and Hohn did not see him again.

---

[7] The state also contends that the defendant's written confession was admitted properly because it was made after the defendant had received *Miranda* warnings and had waived his rights.

Officer Steve Murphy and Sergeant Christopher Gioielli of the Stamford police department, both of whom also had been present at the defendant's house, offered the following testimony about the circumstances of the defendant's written statement at the police station. Murphy stated that, while the defendant was being processed at the police station, he said that he wanted to give a statement. Gioielli began the statement process with the defendant at approximately 11 p.m. The defendant read his *Miranda* rights from the statement form and Gioielli had him initial and sign a written acknowledgment of those rights on the form. Murphy came in later to complete the statement process with the defendant. After the defendant had completed his statement, the defendant and Murphy signed below the statement, and Gioielli notarized the statement. Murphy noted on the form the time that the statement was complete, 11:25 p.m., and the defendant and Murphy again signed the statement form.

At trial, the defendant offered the following testimony, which differed markedly from the testimony of the police officers. When Hohn came downstairs after finding narcotics in the bedroom, he identified himself as "officer pretty boy," and stated that, "unless someone takes the blame for what they found everyone is going to jail." According to the defendant, Hohn stated that he "knew McBride's background and that [McBride] couldn't stand to be involved in what was going on in the house." The defendant denied initiating any conversation with Hohn. He testified that he and McBride had been companions for two and one-half years, and while he was concerned over what would happen to McBride, who had been released recently from jail and was on probation, it was only after Hohn made his threatening statements that the defendant confessed. The defendant stated that following his oral confession at the house and before he was transported to the police station,

Hohn told him that if he did not make a written confession "relieving [McBride] of any blame that they would go back and . . . make it hard for [McBride]."

At argument on the motion to suppress the defendant's statements, the trial court queried whether the defendant was so coerced from the pressure at the house that he felt that he had to sign the confession at the station. Defense counsel answered yes, noting that "[the police] did say to him [that] . . . if you don't sign this we're going to go back and get . . . McBride." The state countered by noting that the police had no motivation to threaten the defendant with McBride's arrest because they could have arrested McBride at any time for violation of probation. In contrast, the state argued, the defendant was highly motivated to protect McBride by confessing.

The trial court first found that the defendant was in custody at the house and that the only issue was whether there had been an interrogation. The court noted that whether an interrogation had occurred depended directly upon the credibility of the witnesses. The court found Hohn's testimony to be more credible than the defendant's. The court considered the defendant's prior convictions and the fact that he had "more of an interest in making those statements than Hohn [had in] making the statements [the defendant] said [Hohn made]," and agreed with the state that Hohn had no motivation to threaten the defendant, whereas the defendant was highly motivated to protect his companion, McBride. With respect to the written statement, the court found that the defendant had been given *Miranda* warnings before that statement had been made. The court therefore denied the motion to suppress both the oral and written statements.

A

We first address the issue of whether the oral and written statements were coerced and therefore involun-

tary. The state contends that this issue was not preserved for review because: (1) the defendant did not raise a claim of coercion in the trial court; and (2) the trial court made no factual findings concerning coercion. Therefore, the state contends that the claim is unreviewable. The defendant asserts that he preserved his coercion claim by way of his motion to suppress. He further contends that, to the extent his claim was not properly preserved, it is reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[8] We agree with the state.

It is well settled that an appellant may not seek review of a claim that was not raised in the trial court. *State* v. *Sandoval*, 263 Conn. 524, 556, 821 A.2d 247 (2003). If an appellant has raised an issue in the trial court that the court has failed to address, it is the appellant's responsibility to obtain a ruling on that claim. "It is well established that [i]t is the appellant's burden to provide an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . *or to ask the trial judge to rule on an overlooked matter*." (Emphasis added; internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 232,

---

[8] Under *State* v. *Golding*, supra, 213 Conn. 239–40, the defendant can prevail on unpreserved claims of constitutional error only if the following conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." "The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Cook*, 287 Conn. 237, 243 n.9, 947 A.2d 307 (2008).

828 A.2d 64 (2003); see also Practice Book §§ 60-5 and 66-5.

Whether a confession is involuntary because it was coerced rests upon factual determinations regarding the circumstances surrounding the defendant's confession. *State* v. *Azukas*, 278 Conn. 267, 290, 897 A.2d 554 (2006). Although the ultimate question of voluntariness is one of law over which our review is plenary, the factual findings underpinning that determination will not be overturned unless they are clearly erroneous. Id. As in other cases in which the factual findings implicate a defendant's constitutional rights and the credibility of witnesses is not the primary issue, we will, however, undertake a scrupulous examination of the record to ensure that the findings are supported by substantial evidence. *State* v. *Betts*, 286 Conn. 88, 95, 942 A.2d 364 (2008).

In the present case, although the defendant did raise briefly the issue of coercion in his motion to suppress, the trial court made no factual findings concerning whether the circumstances surrounding the defendant's statements were coercive. Although the defendant subsequently filed a motion for articulation seeking the factual basis of eleven different issues underlying the court's ruling on the motion to suppress, none of those related directly to the issue of coercion. The record is therefore inadequate, and accordingly, the defendant cannot rely on *State* v. *Golding*, supra, 213 Conn. 239, for review of this unpreserved claim, as he failed to satisfy the first prong of *Golding*. See id. (noting that unpreserved claim may be reviewed only if, inter alia, "the record is adequate to review the alleged claim of error"); see footnote 8 of this opinion.

The defendant contends, nevertheless, that this court previously has reviewed similar coercion claims under *Golding* in the past because the facts used to determine

whether there was any interrogation also may be used to determine whether there was coercion. The defendant cites *State* v. *Medina*, 228 Conn. 281, 294 n.11, 636 A.2d 351 (1994), in support of this proposition.[9] That case is inapposite. In *Medina*, although the defendant had not raised the issue of coercion, the uncontested trial testimony that went to the issue of whether there had been a custodial interrogation "provide[d] a sufficient basis for review of the unpreserved claim concerning police coercion." Id. That approach was entirely consistent with the general rule that, "[o]rdinarily it is not the function of this court . . . to make factual findings, but rather to decide whether the decision of the trial court was clearly erroneous in light of the evidence and pleadings in the whole record. . . . Conclusions of fact may be drawn on appeal *only where the subordinate facts found [by the trial court] make such a conclusion inevitable as a matter of law . . . or where the undisputed facts or uncontroverted evidence and testimony in the record make the factual conclusion so obvious as to be inherent in the trial court's decision.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Reagan*, 209 Conn. 1, 8–9, 546 A.2d 839 (1988).

In the present case, there was contradictory testimony between the defendant and the police officers concerning the circumstances surrounding the making of the statements. To the extent that the trial court's findings as to custodial interrogation implicate facts relevant to coercion in any way, they only indicate that Hohn's testimony was more credible than the defendant's, which necessarily means that the court did not

---

[9] The defendant also cites *State* v. *Brown*, 98 Conn. App. 829, 835–36, 912 A.2d 525 (2006), cert. denied, 281 Conn. 920, 918 A.2d 272 (2007), in support of his contention that his claim of coercion can be reviewed. *Brown* is inapposite because, unlike the present case, there was nothing in the record to indicate that there was contradictory testimony that the trial court needed to resolve.

credit the defendant's testimony that any threat was made. Although the defendant points to the fact that he was detained in handcuffs and under armed guard, without credible testimony of any threat by Hohn, there is no evidence that any activity that was sufficiently oppressive and intimidating so as to constitute coercion occurred. As this court has noted, "[a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. . . . Interrogation, as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." (Citation omitted; internal quotation marks omitted.) *State* v. *Vitale*, 197 Conn. 396, 412, 497 A.2d 956 (1985).

Finally, the defendant urges us to remand the case to the trial court for factual findings concerning the coercion claim under our supervisory authority, citing as support *State* v. *Byrd*, 233 Conn. 517, 522–23, 659 A.2d 1201 (1995), on appeal after remand, 239 Conn. 405, 685 A.2d 669 (1996), and *State* v. *Ostroski*, 184 Conn. 455, 457, 440 A.2d 166 (1981), on appeal after remand, 186 Conn. 287, 440 A.2d 984, cert. denied, 459 U.S. 878, 103 S. Ct. 173, 74 L. Ed. 2d 142 (1982). Those cases also are inapposite. This court has remanded cases to clarify the legal context of factual findings actually made; see *State* v. *Byrd*, supra, 522–23 (remanding to clarify whether trial court's findings concerning voluntariness were made under federal constitutional test set forth by United States Supreme Court or under broader state constitutional test set forth by this court); or to obtain findings when an issue was raised and the defendant was unable to perfect the record through no fault of his own; see *State* v. *Ostroski*, supra, 458–59. The present case does not warrant the rare invocation of our supervisory authority to perfect the record. We therefore decline the defendant's invitation to remand the case to the trial court.

B

We next turn to the defendant's claim that the trial court improperly denied his motion to suppress his statements on the ground that they were a product of a custodial interrogation and therefore were given involuntarily. Specifically, with respect to the oral statement at his house, the defendant contends that Hohn confronted the defendant with incriminating evidence while he was handcuffed and in custody, and that this act was reasonably likely to elicit an incriminating response, thus constituting custodial interrogation for purposes of *Miranda*. The defendant further contends that the later written statement was fruit of this poisonous interrogation. The state responds that there was no credible evidence that Hohn engaged in coercive conduct, and that the defendant spontaneously and voluntarily confessed. We agree with the state.

Certain legal principles control both the resolution of this claim and the appropriate standard of review, and we begin our analysis with those principles. It is well established that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self incrimination." *Miranda* v. *Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). "Two threshold conditions must be satisfied in order to invoke the warnings constitutionally required by *Miranda*: (1) the defendant must have been in custody; and (2) the defendant must have been subjected to police interrogation." (Internal quotation marks omitted.) *State* v. *Turner*, 267 Conn. 414, 434, 838 A.2d 947, cert. denied, 543 U.S. 809, 125 S. Ct. 36, 160 L. Ed. 2d 12 (2004). "The defendant bears the burden of proving that he was in custody for *Miranda* purposes." (Internal quotation marks omitted.) *State* v. *Canales*, 281 Conn. 572, 584, 916 A.2d 767 (2007).

A defendant in custody is subject to interrogation not only in the face of express questioning by police but also when subjected to "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (Internal quotation marks omitted.) Id., 585, quoting *Rhode Island* v. *Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). Whether a defendant in custody is subject to interrogation necessarily involves determining first, the factual circumstances of the police conduct in question, and second, whether such conduct is normally attendant to arrest and custody or whether the police should know that such conduct is reasonably likely to elicit an incriminating response. *State* v. *Grant*, 286 Conn. 499, 525–26, 944 A.2d 947 (2008).

Although these legal principles are well established, we have not addressed expressly what standard of review guides this court's inquiry. As a general matter, the standard of review for a motion to suppress is well settled. "A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . ." (Internal quotation marks omitted.) *State* v. *Luurtsema*, 262 Conn. 179, 184, 811 A.2d 223 (2002). As we have noted previously, however, when a question of fact is essential to the outcome of a particular legal determination that implicates a defendant's constitutional rights, and the credibility of witnesses is not the primary issue, our customary deference to the trial court's factual findings is tempered by a scrupulous examination of the record to ascertain that the trial court's factual findings are supported by substantial evidence. *State* v. *Betts*, supra, 286 Conn. 95; see also id., 95–101 (conducting scrupulous examination of record in context of illegal search and seizure in violation of fourth amendment); *State*

v. *Jones*, 281 Conn. 613, 654–55, 916 A.2d 17 (2007) (conducting scrupulous examination of record to determine whether waiver of fifth amendment rights was valid), cert. denied, 552 U.S. 868, 128 S. Ct. 164, 169 L. Ed. 2d 112 (2007); *State* v. *Atkinson*, 235 Conn. 748, 759–60, 670 A.2d 276 (1996) (conducting scrupulous examination of record to determine whether defendant was in custody for purpose of fifth amendment *Miranda* warnings). "[W]here the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Luurtsema*, supra, 184.

We previously have not stated expressly if the issue of whether an interrogation has occurred is a question of fact, law or both. We have determined, however, the standard of review for the custody prong of custodial interrogation. The question of whether a defendant is in custody for purposes of a custodial interrogation involves a two step inquiry. The trial court first makes a factual determination of the circumstances surrounding the alleged interrogation and then applies those facts to an objective test as to whether a reasonable person would have felt that he or she was not at liberty to leave. *State* v. *Canales*, supra, 281 Conn. 584–85. The first inquiry is factual and will not be overturned unless, after a scrupulous examination of the record, we find that it is clearly erroneous. Id., 585; *State* v. *Betts*, supra, 286 Conn. 95. The second question "calls for application of the controlling legal standard to the historical facts [which is a question of law]. . . . The ultimate determination of whether a defendant was subjected to a custodial interrogation, therefore, presents a mixed question of law and fact, over which our review is de novo." (Internal quotation marks omitted.) *State* v. *Canales*, supra, 585.

As we have established previously, the other aspect of custodial interrogation—whether a defendant was subjected to interrogation—involves a similar two step inquiry in which the court must determine first, the factual circumstances of the police conduct in question, and second, whether such conduct is normally attendant to arrest and custody or whether the police should know that it is reasonably likely to elicit an incriminating response. *State* v. *Grant*, supra, 286 Conn. 525–26. Because this framework is analogous to the determination of whether a defendant is in custody, the ultimate determination, therefore, of whether a defendant already in custody has been subjected to interrogation also presents a mixed question of law and fact over which our review is plenary, tempered by our scrupulous examination of the record to ascertain whether the findings are supported by substantial evidence.

In the present case, the trial court found, and the state concedes, that the defendant had been in custody before he made his oral statements at the house, and that the defendant had made these oral statements before being given *Miranda* warnings. The only issue is whether the defendant had been subjected to interrogation. We conclude that he had not been.

We first examine the factual circumstances of the police conduct in question. As we previously have noted, at the suppression hearing, the trial court was confronted with conflicting versions of events from the defendant and Hohn. The trial court began by noting that to resolve the question of whether an interrogation had occurred, it must determine which of the two witnesses was more credible. The court reasoned that the defendant was highly motivated to confess to protect his companion of several years, McBride, who recently had been released from jail and was on probation. The court also considered the defendant's past convictions

that bore on his veracity.[10] The court noted that Hohn had no motivation to threaten the defendant with McBride's arrest because Hohn had reason to arrest both the defendant and McBride. In light of these determinations, the court found that Hohn's testimony was more credible than the defendant's.

Notwithstanding our responsibility to examine the record scrupulously, it is well established that we may not substitute our judgment for that of the trial court when it comes to evaluating the credibility of a witness. *State* v. *Jones*, supra, 281 Conn. 655. It is the exclusive province of the trier of fact to weigh conflicting testimony and make determinations of credibility, crediting some, all or none of any given witness' testimony. *State* v. *Iban C.*, 275 Conn. 624, 634, 881 A.2d 1005 (2005). "Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Felder*, 95 Conn. App. 248, 263, 897 A.2d 614, cert. denied, 279 Conn. 905, 901 A.2d 1226 (2006). The trial court stated its rationale for its findings and reasonably reached its conclusions from the evidence presented. There is nothing to support the conclusion that the findings were clearly erroneous.

Turning to the second inquiry as to whether the facts as found constitute interrogation, it is clear that the police conduct did not constitute interrogation. According to Hohn's testimony, the defendant initiated the conversation and confessed to possessing the narcotics. As we previously have noted, "[i]nterrogation,

---

[10] The defendant had two prior convictions for issuing bad checks and two prior convictions for larceny.

as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself. . . . Voluntary statements of any kind are not barred by the fifth amendment." (Citation omitted; internal quotation marks omitted.) *State* v. *Vitale*, supra, 197 Conn. 412. We therefore conclude that the trial court properly denied the defendant's motion to suppress his oral statement.

Despite the trial court's findings, however, the defendant points to inconsistencies in Hohn's testimony and contends that these inconsistencies rendered the trial court's credibility determination in favor of Hohn clearly erroneous. He urges us to reject the credibility finding and determine whether interrogation occurred in light of the defendant's testimony. We disagree with the defendant's view of the record.

Admittedly, Hohn's testimony was somewhat confusing. At first, he stated that he had told the defendant what he found in the bedroom, and later, he clearly and unequivocally stated that he had said nothing before the defendant called him over and made the incriminating statements. In light of the sequence of these statements and the trial court's credibility determination, we view Hohn's later statements as clarifying his earlier ones. In other words, Hohn's testimony, viewed as a whole, indicates that he had the intention of telling the defendant what the officers had found in the bedroom, but that the defendant had called him over and confessed before Hohn followed through on that intention. Nothing in the record persuades us that the trial court's findings were clearly erroneous or that its application of the law to the facts was improper. We therefore conclude that the trial court properly denied the motion to suppress the defendant's oral statement.

In light of this conclusion, the defendant's claim challenging the admission of his written statement also must

fail. He claims that his written statement at the police station should not have been admitted because it was "tainted by the first [illegal] statement given at the apartment . . . ." This claim depends upon the defendant prevailing on his claim that his oral statement was admitted improperly as the product of interrogation. Because we conclude that the trial court properly denied the defendant's motion to suppress his oral statement, the claim that his later written statement was tainted by that earlier statement necessarily fails.[11]

## II

The defendant's second claim is that the trial court improperly denied his motion in limine regarding the search warrant. Specifically, the defendant claims that the police testimony that they had a valid, legal reason to enter the defendant's house unduly prejudiced him because the jury "likely realized there must have been evidence of drug sales . . . and consequently, [the] defendant most likely intended to sell the drugs." The defendant contends that the trial court "failed to consider the nature of the prejudice or to weigh its effect against any probative value." In response, the state contends that: (1) the trial court awarded the defendant the relief that he had requested; and (2) to the extent that the relief ordered fell short of what he had sought, his claim has been waived because he failed to alert the trial court to that fact. We agree with the state.

The record reveals the following relevant additional facts and procedural history. The defendant filed a motion in limine asking that the trial court prohibit the state from "making any mention, either direct or

[11] The defendant also contends that his trial testimony was "induced by the erroneous admission of his confessions and he would not have testified had his statements been suppressed." In light of our conclusions that the oral and written statements were admitted properly, this claim also necessarily fails.

indirect, concerning the circumstances whereby the police entered 33 Sheridan Street [in] Stamford. *Specifically, [the defendant] moves the court to enjoin the state from making reference to the entry of 33 Sheridan Street as being pursuant to a search warrant. And further enjoin the state from bringing forth the allegations set forth in the warrant affidavit.*" (Emphasis added.) At the hearing on the motion, the defendant focused on precluding testimony about the search warrant: "I'm asking the court to order that the state . . . and any of its witnesses who come forward be instructed to only say they entered the premises—not that they entered the premises pursuant to a search warrant—and/or, in addition to that, how one gets a search warrant and the underlying facts to the search warrant. . . . [T]he mere mention of a search warrant . . . could be overly prejudicial to my client. . . . [I]f the jury finds out that it was pursuant to a search warrant, I am fearful that a juror may say, hey, they got a judge to already review all this evidence and . . . they felt there must have been a crime and that's why they signed the search warrant and that's why they went in, so this guy must be guilty." The state responded by noting that, although it had no intention of going into the facts underlying the search warrant, it believed that it was "important that the jury understand a police officer had a valid, legal reason for entering the premises" so that the jury would not be "left with the inference that there was some kind of illegal conduct by the police officers . . . ." The trial court agreed with the state that the jury should be informed that there was a valid legal reason for entering the premises but also agreed with the defendant that "there shouldn't be an in-depth discussion or testimony about the search warrant, whether there was probable cause, what [the police] did to get the search warrant [or] that a judge signed the search warrant . . . ." Thereafter, the court

denied the defendant's motion in limine, but issued the following order: "[The] police [and] witness[es] are limited to testifying that they had a valid legal reason to enter premises. No mention of search warrant or bases for obtaining."

Our review of the record reveals that the defendant was granted the relief that he had requested in his motion. We underscore that the defendant's motion specifically asked that the state be prohibited from "making reference to the entry . . . as being pursuant to a search warrant" and "from bringing forth the allegations set forth in the warrant affidavit." Although during oral argument on the motion, the defendant asked that the state's witnesses be limited to stating only that they had entered the premises, that request was followed and put in context by the defendant's argument that focused on the search warrant and the prejudicial effect that any mention of the search warrant would have. Despite the fact that the trial court marked the motion as "denied," it granted the precise relief requested by precluding the state from eliciting any testimony regarding the warrant.[12] Cf. *Seymour* v. *Seymour*, 262 Conn. 107, 111, 809 A.2d 1114 (2002) (stating in civil context that "[a] party cannot be aggrieved by a decision that grants the very relief sought" [internal quotation marks omitted]).

Moreover, there is no evidence that the relief ordered fell short of addressing the defendant's underlying concerns. Cf. id., 114 (noting in civil context that "[a] prevailing party . . . can be aggrieved if the relief awarded to that party falls short of the relief sought" [internal quotation marks omitted]). Following the state's argument that the jury should at least be made aware that

[12] For reasons that are not clear from the record, the court initially had circled "granted" on the defendant's motion in limine, but then crossed that notation out and circled "denied."

the entry was legal and not the result of police misconduct, the defendant never argued that the mere reference to legal entry would imply to the jury that the police had entered pursuant to a warrant and therefore should be precluded on that basis.[13] Therefore, to the extent that the defendant now contends that the relief obtained was insufficient, that claim was not made in the trial court. We therefore decline to review this claim. See *State* v. *Sandoval*, supra, 263 Conn. 556.

### III

The defendant's third claim is that the trial court improperly denied his motion to disclose the identity of the confidential informant. Specifically, he asserts that: (1) the state never asserted the confidential informant privilege, as it was required to do; (2) the trial court improperly found that the identity of the informant was irrelevant to his defense; and (3) the trial court improperly failed to apply the balancing test enunciated in *Roviaro* v. *United States*, 353 U.S. 53, 60, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957), to determine whether the defendant was entitled to the identity of the confidential informant. We are not persuaded.

The record reveals the following additional relevant facts and procedural history. The defendant filed a motion to disclose the identity of the confidential informant whose information had given rise to the issuance of the search warrant, alleging that the informant's identity was "necessary to the defendant in order to present a defense; to protect the defendant's due process rights; and to have compulsory process to obtain witnesses." The state did not file a response to the motion. The trial court thereafter held a hearing on the motion. At

---

[13] Indeed, we note that there are many reasons by which police may legally enter a residence, e.g., exigent circumstances, by consent, or incident to an arrest. Thus, the term legal entry does not necessarily imply the existence of a search warrant.

that hearing, defense counsel asserted the following argument as to why disclosure of the informant's identity was necessary for him to present a defense at trial: "[W]hen my client was arrested, there were three other persons in the premises. As we are unaware of who the informant is, it is potential[ly true] that one of the people present in the apartment [was], in fact, the [informant]. . . . [I]t is possible that perhaps they are responsible for placing the narcotics in the home. I understand it's a bit of a stretch but . . . by the very nature of a confidential informant, we don't know who it is so we can't explore that." The trial court then engaged in a lengthy colloquy with defense counsel that focused on the relevance that the identity of the confidential informant had to the defendant's defense and on the speculative nature of the defendant's argument. At the end of the colloquy, the court stated: "I'm . . . disclosing the confidential informant only when it becomes relevant to the case," and then asked the state's attorney if he had anything to say. The state's attorney, who had been silent throughout the court's colloquy with the defendant, replied "[n]o further argument," and the court thereafter denied the defendant's motion.

Five days later, at a hearing on a different motion, the court reopened discussion on the motion to disclose the identity of the confidential informant. The defendant renewed his argument that the identity was necessary for the preparation of a defense: "[O]nce again in order to allow the defense to fully [ferret] out the defense I would again ask the court to compel the state to indicate who the confidential informant is." The state opposed the motion: "Your Honor, the confidential informant is totally irrelevant. There are very valid reasons for protecting the identity of the confidential informant." The court reiterated its denial of the defendant's motion.

We first set forth the proper standard for this court's review. The determination of whether an informant's identity shall be disclosed is within the discretion of the trial court and is reviewable under an abuse of discretion standard. *State* v. *Hernandez*, 254 Conn. 659, 665, 759 A.2d 79 (2000). "In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness] of its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) Id., 665–66. We will disturb the factual findings underpinning the trial court's decision only when those findings are clearly erroneous such that there is no evidence in the record to support them. *State* v. *Webb*, 238 Conn. 389, 449–50, 680 A.2d 147 (1996), aff'd after remand, 252 Conn. 128, 750 A.2d 448, cert. denied, 531 U.S. 835, 121 S. Ct. 93, 148 L. Ed. 2d 53 (2000).

We turn next to the legal principles that control the resolution of this claim. "[T]he inform[ant's] privilege is in reality the [g]overnment's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. . . . [T]he purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement." (Internal quotation marks omitted.) *State* v. *Hernandez*, supra, 254 Conn. 666. This privilege "may be invoked by [the state's] officers who as witnesses or otherwise are called on for the information . . . . The state must not only assert the privilege, but also present to the court the underlying circumstances supporting its claim that the privilege applies." (Citations omitted; internal quotation marks omitted.) *State* v. *Jackson*, 239 Conn. 629,

634, 687 A.2d 485 (1997); see also id., 633 (setting forth general principles that should be considered in applying privilege). "Once the state has invoked the privilege, it is then the defendant's burden to show that the balance of the evidence falls in favor of disclosure." Id., 636.

To determine whether the defendant has met this burden, the court balances two competing interests identified by the United States Supreme Court in *Roviaro* v. *United States*, supra, 353 U.S. 60. Namely, the court must consider (1) whether the state's interest in encouraging citizens "to communicate their knowledge of the commission of crimes to law-enforcement officials . . . by preserving their anonymity"; (internal quotation marks omitted) *State* v. *Hernandez*, supra, 254 Conn. 666; and protecting them from reprisals is outweighed because (2) disclosure of such an informant's identity is necessary "to the defense of an accused, or . . . essential to a fair determination of a cause . . . ." (Internal quotation marks omitted.) Id., 667. "[W]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," the privilege must yield. (Internal quotation marks omitted.) Id. "Mere speculation that the informant's information will be helpful to the defense is not sufficient to mandate disclosure . . . ." *State* v. *Richardson*, 204 Conn. 654, 663, 529 A.2d 1236 (1987).

### A

The defendant first contends that the trial court improperly denied his motion to identify the confidential informant because the state had failed to assert the privilege to keep the identity of the informant confidential, as it was required to do. The state argues that this claim is unpreserved because the defendant did not raise it in the trial court. We agree with the state.

As we previously have noted, an appellant may not seek review of a claim on appeal that was not raised in the trial court. *State* v. *Sandoval*, supra, 263 Conn. 556. "The purpose of requiring trial counsel to object properly is not merely formal: it serves to alert the trial court to purported error while there is time to correct it without ordering a retrial." (Internal quotation marks omitted.) Id. We note that, although the defendant had contended in the trial court that the confidential informant privilege was inapplicable, he failed to alert the trial court that the state had not asserted the privilege. Had he done so, the trial court readily could have addressed this issue by asking the state whether it was invoking the privilege. Because the defendant failed to raise this claim previously, we decline to review it.[14]

We take this opportunity, however, to provide some guidance as to the invocation of the informant's privilege. Although this court has indicated that the state must invoke the privilege; *State* v. *Jackson*, supra, 239 Conn. 634; we have not explained previously what conduct suffices to constitute such an invocation. In our view, there is no particular talismanic phrase that must be asserted or any specific conduct that must be adhered to in every case. Rather, the state must make clear that it seeks to keep the identity of the informant confidential, and that its reason for doing so is consistent with the purpose underlying the privilege. For

---

[14] To the extent that the defendant relies on *Golding* to seek review of this unpreserved claim, his claim fails because it is not of constitutional dimension. See *State* v. *Golding*, supra, 213 Conn. 239–40. The question of whether the confidential informant's privilege applies lies within the discretion of the trial court and is reviewed for abuse of discretion. *State* v. *McDaniel*, 176 Conn. 131, 132–33, 405 A.2d 68 (1978). Although the application of the privilege might implicate the defendant's constitutional rights, the question of whether the state has asserted the privilege in the first instance is an evidentiary matter that falls within the discretion of the court, rather than one of constitutional magnitude. Thus, the claim fails the second prong of *Golding*. See footnote 8 of this opinion.

example, when the state, through the actions of police officers, has applied, pursuant to General Statutes § 54-33c,[15] to withhold information in its affidavit in support of a search warrant relevant to the identity of a confidential informant and has attested therein that the informant's safety would be jeopardized if his or her identity is disclosed, that conduct suffices to invoke the privilege. In the absence of subsequent conduct inconsistent with the assertion of the privilege, that privilege is presumed to have continued in force unless and until the defendant makes a showing that disclosure of the confidential informant's identity is required in accordance with settled law.[16]

B

The defendant also claims that the trial court improperly concluded that the identity of the confidential informant was irrelevant to the defense. Specifically, the

[15] General Statutes § 54-33c (a) provides in relevant part: "The applicant for the search warrant shall file the application for the warrant and all affidavits upon which the warrant is based with the clerk of the court for the geographical area within which any person who may be arrested in connection with or subsequent to the execution of the search warrant would be presented with the return of the warrant. . . . Within forty-eight hours of such search, a copy of the application for the warrant and a copy of all affidavits upon which the warrant is based shall be given to such owner, occupant or person. The judge or judge trial referee may, by order, dispense with the requirement of giving a copy of the affidavits to such owner, occupant or person at such time if the applicant for the warrant files a detailed affidavit with the judge or judge trial referee which demonstrates to the judge or judge trial referee that (1) the personal safety of a confidential informant would be jeopardized by the giving of a copy of the affidavits at such time . . . ."

[16] In the present case, we note that the state indicated in its application for a search warrant, pursuant to § 54-33c, that "[t]he personal safety of a confidential informant would be jeopardized" by giving a copy of the affidavit underlying the search warrant to the person named therein and requested that a copy of the affidavit be withheld. The judge issuing the warrant granted the state's request. Thereafter, when the trial court reopened discussion on this issue at its hearing on June 6, 2005, the state also formally opposed disclosure by stating "[t]here are valid reasons for protecting the identity of the confidential informant."

defendant claims that, if the confidential informant had been one of the other individuals who was present in the house at the time of his arrest, and if that person "had possibly placed the drugs in [the defendant's] bedroom," his defense at trial would have been different, i.e., lack of knowledge of their existence rather than that the drugs were for his personal use. He maintains that the information was relevant to his defense, and, therefore, he claims that the trial court improperly denied his motion.

In a related claim, the defendant asserts that the trial court improperly failed to apply the *Roviaro* balancing test, as required when considering whether to disclose the identity of a confidential informant. Specifically, the defendant contends that the trial court: (1) "did not consider the crimes with which [the] defendant was charged or his possible defenses"; and (2) focused on the fact that the court "did not want [the] defendant to label a witness in front of the jury as a confidential informant." We conclude that the trial court did not abuse its discretion in concluding that the information was not relevant to the defense, and in light of this conclusion, the defendant's claim that the trial court improperly failed to apply the *Roviaro* balancing test must also fail.

As we have noted, for a defendant to compel disclosure of the identity of a confidential informant, he must show that the information is relevant to presenting a defense or necessary for a fair trial or resolution of a cause. *State* v. *Hernandez*, supra, 254 Conn. 666–67. The burden falls on the defendant to make that showing, and only then may a court consider whether the defendant's interests outweigh those of the state. Id. "Mere speculation that the informant's information will be helpful to the defense is not sufficient to mandate disclosure . . . ." *State* v. *Richardson*, supra, 204 Conn. 663.

In the present case, the trial court did not abuse its discretion in denying the defendant's motion. Neither the information provided to the police by the informant nor the controlled purchases made by the informant provided a basis for the charges against the defendant. The defendant admitted that his arguments as to why the information was relevant to the defense were speculative. The defendant offered nothing other than this speculation that the informant's identity might be either relevant to his defense or necessary for a fair trial. See id. (stating that mere speculation is insufficient to invade privilege). He never contended that he had other information that would have connected any of the other persons at the house with the placement of the drugs in his bedroom. In the absence of any such contention, the trial court did not abuse its discretion in concluding that the informant's identity was not relevant.

In light of this conclusion, the defendant's claim that the trial court improperly failed to apply the *Roviaro* balancing test also must fail. The relevance of the informant's identity is a necessary predicate to application of that test. *State* v. *Hernandez*, supra, 254 Conn. 666–67. Because the defendant did not meet his burden of establishing the relevance of that information to his defense, there was no need for the trial court to engage in the *Roviaro* balancing test.

IV

The defendant's fourth claim is that his convictions of possession of narcotics with intent to sell in violation of § 21a-277 (a) and possession of narcotics in violation of § 21a-279 (a) violate the double jeopardy clause of the federal and state constitutions.[17] See U.S.

[17] "The constitution of Connecticut does not contain an express prohibition against double jeopardy. Instead, we repeatedly have held that the due process guarantees . . . of the Connecticut constitution . . . include protection against double jeopardy." (Internal quotation marks omitted.) *State* v. *Bletsch*, 281 Conn. 5, 9 n.4, 912 A.2d 992 (2007).

Const., amend. V; Conn. Const., art. I, §§ 8 and 9. Specifically, the defendant contends that, because possession is a lesser included offense of possession with intent to sell and both charges arose from the same act or transaction, the sentence for possession must be vacated. The defendant seeks review under *Golding* on this unpreserved claim, and the state concedes that the defendant is entitled to prevail on this claim. We agree.

The federal and state constitutions prohibit multiple punishments if: (1) the charges arise out of the same act or transaction; and (2) the charged crimes are the same offense. *State* v. *Chicano*, 216 Conn. 699, 706, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). Only the relevant statutes, charging documents and bill of particulars are used to evaluate this test, not the evidence presented at trial. *State* v. *Bletsch*, 281 Conn. 5, 27–28, 912 A.2d 992 (2007).

In the present case, it is clear that the charges of both possession of narcotics with intent to sell and possession of narcotics arose from the same act or transaction. The information charging the defendant with both crimes alleges that the crimes were committed on the same date, in the same location, and with the same narcotic: "[O]n or about July 13, 2004, in the [c]ity of Stamford, [the defendant] did possess narcotics, specifically heroin . . . ."

Turning to the statutory provisions themselves, it is equally clear that the charged crimes are the same offenses: the possession charge under § 21a-279 (a) is a lesser included offense of the possession with intent to sell charge under § 21a-277 (a) because there is no

element in the possession charge that is not also in the possession with intent to sell charge. Compare footnotes 1 and 3 of this opinion. It is not possible to commit possession with intent to sell without first committing the offense of possession applying these elements to the facts as charged. Accordingly, we conclude that the defendant's constitutional protections against double jeopardy have been violated.

The remedy when a defendant has been sentenced for both a greater and lesser included offense is to merge the conviction for the lesser included offense with the conviction for the greater offense and to vacate the sentence for the lesser included offense. *State* v. *Jeffreys*, 78 Conn. App. 659, 683, 828 A.2d 659, cert. denied, 266 Conn. 913, 833 A.2d 465 (2003). Accordingly, the defendant's conviction of possession of narcotics in violation of § 21a-279 (a) must be combined with his conviction of possession of narcotics with intent to sell in violation of § 21a-277 (a), and his sentence for possession of narcotics must be vacated.

The judgment is reversed in part and the case is remanded to the trial court with direction to merge the conviction of possession of narcotics with the conviction of possession of narcotics with intent to sell and to vacate the sentence on the conviction of possession of narcotics; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.