## STATE OF CONNECTICUT *v.* CARLOS POLANCO
### (AC 31516)

DiPentima, C. J., and Alvord and Mihalakos, Js.

---

Argued October 21, 2010—officially released February 1, 2011

*Daniel M. Erwin*, certified legal intern, with whom was *Elizabeth M. Inkster*, senior assistant public defender, for the appellant (defendant).

*Melissa Patterson*, deputy assistant state's attorney, with whom were *Andrew J. Slitt*, deputy assistant state's attorney, and, on the brief, *Patricia M. Froehlich*, state's attorney, and *Mark A. Stabile*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Carlos Polanco, appeals from the judgment of conviction, rendered after

a jury trial, of possession of a narcotic substance with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-277 (a) and possession of drug paraphernalia in violation of General Statutes § 21a-267 (a). On appeal, the defendant claims that (1) the state violated his right to due process under the Connecticut constitution as a result of the destruction or loss of potentially exculpatory evidence and (2) the sentence imposed by the court violated the prohibition against double jeopardy. We agree only with the defendant's double jeopardy claim, and we affirm the judgment in all other respects.

In the spring of 2008, the statewide narcotics task force focused an investigation on narcotics trafficking from an apartment building located at 287 Main Street in Willimantic. After receiving information from a confidential informant, officers arranged for a controlled purchase of cocaine from apartment 107. Approximately one month later, two additional controlled purchases of cocaine occurred at apartment 107. As a result of this investigation, officers obtained search warrants for apartment 107 and for the person of the defendant. These warrants were executed on April 22, 2008.

On that day, the defendant was stopped while driving toward Route 6. The search of the defendant's person revealed approximately $100 in cash and no narcotics. Officers transported the defendant to 287 Main Street and executed the search warrant for apartment 107. Inside the apartment were Adolfo Cruz and Julyssa Delvalle. During the search, a cellular telephone belonging to either Cruz or Delvalle rang, and police Detective Robert Rosado answered it. Acting in an undercover capacity, Rosado arranged for a narcotics purchase, telling the caller to "come by." This individual, later identified as Donna Johnson, arrived shortly thereafter

and, after attempting to purchase cocaine, was placed under arrest.

A search of the apartment revealed the presence of inositol powder, a substance commonly used as a "cutting agent" by those selling narcotics.[1] Officers also seized a digital scale, used to weigh and package narcotics for sale, and plastic bags with cut corners that are used for the packaging of cocaine for sale. Officers also found a quantity of cocaine, consistent with sales rather than personal use, placed in the ceiling tiles in the common area of the building just outside of apartment 107. Above the ceiling tiles of the apartment was approximately $1500 in cash. The members of the statewide narcotics task force also seized a wireless camera system that, in their experience, was used to avoid police attention.

Following a jury trial, the defendant was convicted of (1) possession of a narcotic substance with intent to sell by a person who is not drug-dependent, (2) possession of a narcotic substance with intent to sell and (3) possession of drug paraphernalia. With respect to the first count, the court sentenced the defendant to ten years incarceration, five of which are mandatory, and ten years special parole. As to the second count, the court sentenced the defendant to ten years incarceration. The court stated: "Those are concurrent and as a matter of law should be merged with sentencing." As to the third count, the court ordered an unconditional discharge. Accordingly, the defendant received a total effective sentence of ten years incarceration, five of

---

[1] Police Officer Daniel Gugliotti testified as follows: "Inositol is a white powder [that] can be purchase[d] at the supplement stores . . . . It's a white powder the drug dealers commonly use so they can cut the cocaine with it. They will buy a quantity of cocaine, buy an ounce of cocaine, and mix an ounce of powder—an ounce of cocaine is maybe $800 to $1000 an ounce [and inositol] cost maybe $5—then mix it all together, and it will double the quantity of drugs they get and double the profit."

which are mandatory, and ten years special parole. This appeal followed.

I

The defendant first claims that the state violated his right to due process under the Connecticut constitution as a result of the destruction or loss of potentially exculpatory evidence. Specifically, he claims that the loss of a photograph taken during the booking process deprived him of his right to due process pursuant to article first, § 8, of the Connecticut constitution. We are not persuaded.

The following additional facts are necessary for the resolution of the defendant's claim. Sergeant Ralph Chappell was part of the statewide narcotics task force in March and April, 2008. Prior to the execution of the two search warrants, Chappell went to 287 Main Street by himself to observe the building. He recalled that the shades were "pulled aside" at apartment 107 and that he was able to observe movement inside. As it got darker outside, he was able to see more activity in the interior of the apartment because of the lighting. Chappell testified that he observed "a male wearing a specific sweatshirt that stood out to me as gray with some black stripes on it." He then watched as that individual, the defendant, got into a green vehicle and drove away.

During cross-examination, Chappell again testified that he had observed an individual wearing a "very distinctive sweatshirt [that] was gray with black stripes on it." He saw the individual wearing that sweatshirt exit the building and could see that he was the person they were investigating.

Defense counsel then showed Chappell a photograph that had been admitted into evidence. This photograph depicted Cruz sitting in the apartment while wearing a

sweatshirt with black sleeves. Running down the sleeves was a graphic, in white, of the bones of the arm. On the torso of the shirt, which was primarily white, there was a graphic of the breastbone and rib cage. Chappell agreed that the "stripes on this sweatshirt going down the arms of [Cruz were not] similar to the stripes that [he] described that [the defendant] was wearing . . . ." Chappell further testified that the gray sweatshirt worn by the defendant had thick lateral stripes that were black or very dark in color.

During redirect examination, the prosecutor stated: "I have to admit [that] I got a little bit confused on the colloquy between yourself and defense counsel. The stripes on the sweatshirt [the defendant] was wearing, your answer seems to contradict your hand movement. Did the stripes go up and down or side to side?" Chappell stated that the stripes on the defendant's sweatshirt went up and down, and that he had "used the wrong word" in describing them as lateral.

The next day, defense counsel informed the court regarding a missing piece of evidence, namely, the booking photograph of the defendant. She further indicated that steps had been taken to determine the proper witness or witnesses to testify in regard to the missing photograph.

After the state rested, the defendant called Daniel Greenwood, a state police trooper, as his first witness. Greenwood testified that on April 22, 2008, he participated in the booking process involving the defendant. Specifically, he assisted with fingerprinting and photographing the defendant. To perform these tasks, Greenwood used a live scan system, which consists in part of a computer to process digital fingerprints and photographs. Pursuant to a subpoena, Greenwood checked the live scan machine at the state police barracks to

find the photograph taken of the defendant on April 22, 2008, but was unable to locate it.

During cross-examination by the state, Greenwood again stated that he was unable to locate the photograph of the defendant taken during the booking process. He explained that once the fingerprints and photographs are completed, the next step of the procedure is to "send" the information to a larger, off-site database. Greenwood explained that if the "send" button is not activated, then information, such as the defendant's booking photograph, would remain on the live scan machine used that night and that the data would be purged at some point. On redirect examination, Greenwood testified that he could not recall whether he had sent the data of the defendant's booking to the larger off-site database.

Outside the presence of the jury, defense counsel stated that, in her motion for discovery, she had requested any booking photographs of the defendant. She then made an offer of proof that Chappell had testified that the sweatshirt the defendant had worn on April 22, 2008, looked nothing like the one worn by Cruz. She then argued that a photograph of the defendant taken by the department of correction two days after his arrest showed him wearing a sweatshirt similar to the one worn by Cruz and dissimilar to the one described by Chappell. The court granted the defense a continuance to obtain information from the department of correction and the department of public safety.

At the next day of trial, the defense called Annett Gordon, a records specialist with the department of correction, as a witness. She testified with respect to two photographs of the defendant that were taken when he was admitted to the correctional facility. These photographs depicted the defendant from his head to just below his shoulders, wearing a dark colored sweatshirt

with a white stripe down each sleeve. She further testified that the defendant was admitted to the facility on April 23, 2008, and that the date of the photographs was April 24, 2008.

During closing argument, defense counsel stated that Chappell had testified that, during his surveillance, he saw a person through the apartment window wearing a "distinctive gray sweatshirt with black stripes" and that this individual left in the green vehicle. Counsel then pointed out that in the department of correction's photograph, the defendant was not wearing a gray sweatshirt with black stripes and reminded the jury that the booking photograph had been purged and was not available. Counsel concluded by stating that the discrepancy between the sweatshirt worn by the defendant in the photograph taken when he was admitted to the correctional facility and Chappell's testimony created reasonable doubt.

In response, the prosecutor stated to the jury: "[Defense counsel] commented about how when . . . Chappell saw [the defendant] in the window and followed him and arrested him about somehow the shirt that he had on and in this department of correction photo didn't exactly match up with the description that . . . Chappell gives about what he saw the defendant was wearing through a window with the shade down partially fourteen months earlier. Well, who knows why that was. Maybe the defendant put on another shirt while he was in the custody of the correction department in the two days—in the time he was first taken into custody and the time that he appeared for that photo. Maybe [Chappell] doesn't exactly remember what he was wearing when he saw him through that window fourteen months earlier. . . . There is some concealment there, and it's reasonable to conclude [that] the officer's description isn't exactly on point

fourteen months later, isn't exactly what he saw looking through that window."

On appeal, the defendant claims that the state's loss of the booking photograph deprived him of his right to due process under the Connecticut constitution. Specifically, he claims that without this photograph, he was unable to challenge effectively Chappell's identification of him. The state counters that the loss of the booking photograph did not deprive the defendant of his right to due process. We agree with the state.

The defendant acknowledges that his claim was not preserved at trial.[2] He therefore seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We agree that the record is adequate for review and that the claim is of constitutional magnitude. See *State* v. *Weaver*, 85 Conn. App. 329, 350, 857 A.2d 376, cert. denied, 271 Conn. 942, 861 A.2d 517 (2004). We conclude, however, that the claims fails under the third prong of *Golding* because the defendant has failed to demonstrate that a constitutional violation clearly exists that clearly deprived him of a fair trial.

This is not a case in which the defendant argues that exculpatory evidence was withheld by the state.[3] The defendant's claim is that the state failed to preserve

---

[2] At trial, defense counsel requested a continuance in order to subpoena other evidence to establish what the defendant was wearing when he was arrested. The court granted this request and the defendant did not ask for any other remedy, such as a dismissal of the charges or a suppression of the testimony regarding his appearance. See *State* v. *Morales*, 232 Conn. 707, 728 n.24, 657 A.2d 585 (1995). On appeal, the state argues that, as a result, the defendant has waived any challenge to the missing photograph as a result of induced error. We disagree with the state's waiver argument.

[3] "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the [government]. *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Conn*, 234 Conn. 97, 106, 662 A.2d 68 (1995).

evidence, namely, the booking photograph, that might have been useful to him. See *State* v. *Conn*, 234 Conn. 97, 106, 662 A.2d 68 (1995). In his brief, the defendant acknowledges that the booking photograph "was lost as the result of either a mistake . . . or the . . . disposal policy." In the absence of bad faith there is no violation of due process pursuant to the federal constitution under these circumstances.[4] See id., 107; see generally *State* v. *Morales*, 232 Conn. 707, 657 A.2d 585 (1995).

Our Supreme Court has "enunciated the standard for determining whether the failure of the police to preserve evidence constitutes a due process violation under our state constitution. In *State* v. *Morales*, [supra, 232 Conn. 727], we rejected the federal standard of *Arizona* v. *Youngblood*, [488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988)], and held that, under our state constitution, the good or bad faith of the police in failing to preserve potentially useful evidence cannot be dispositive of whether a criminal defendant has been deprived of due process of law. Rather, in determining whether a defendant has been afforded due process of law under the state constitution, the trial court must employ the [*State* v. *Asherman*, 193 Conn. 695, 724, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985)] balancing test, weighing the reasons for the unavailability of the evidence against the degree of prejudice to the accused. More specifically, the trial court must balance the totality of the circumstances surrounding the missing evidence, including the following factors: the materiality of the missing evidence, the likelihood of mistaken interpretation of it by witnesses or the jury, the reason for its

---

[4] In *Arizona* v. *Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988), the United States Supreme Court stated: "We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."

nonavailability to the defense and the prejudice to the defendant caused by the unavailability of the evidence." (Internal quotation marks omitted.) *State* v. *Valentine*, 240 Conn. 395, 417, 692 A.2d 727 (1997); see also *State* v. *Joyce*, 243 Conn. 282, 300–301, 705 A.2d 181 (1997), cert. denied, 523 U.S. 1077, 118 S. Ct. 1523, 140 L. Ed. 2d 674 (1998).

The first factor of the *Asherman* test is the materiality of the lost evidence. "The measure of materiality is whether there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." (Internal quotation marks omitted.) *State* v. *Morales*, 90 Conn. App. 82, 90, 876 A.2d 561, cert. denied, 275 Conn. 924, 883 A.2d 1250 (2005); see also *State* v. *Estrella*, 277 Conn. 458, 484–85, 893 A.2d 348 (2006). We conclude that such a reasonable probability does not exist here. First, we note that it is pure speculation on the part of the defendant to assume that the sweatshirt worn at the time of his photograph at the correctional facility was the same item of clothing he wore at the time of his arrest. See, e.g., *State* v. *Weaver*, supra, 85 Conn. App. 351 (lack of record of content of missing second page of witness' statement limited appellate review); *State* v. *Coleman*, 41 Conn. App. 255, 265–66, 675 A.2d 887 (1996) (speculation to assume that sample could have been tested for DNA matter), rev'd on other grounds, 242 Conn. 523, 700 A.2d 14 (1997); *State* v. *Morales*, 39 Conn. App. 617, 623–24, 667 A.2d 68 (speculation to assume tests could have been performed and whether such tests would have revealed scientifically useful evidence had jacket been preserved), cert. denied, 235 Conn. 938, 668 A.2d 376 (1995). There was no evidence regarding the clothing worn by the defendant at the time of the booking photograph. Accordingly, we cannot make any assumption regarding the clothing worn by the defendant at the time his booking

photograph was taken. See *State* v. *Estrella*, supra, 486. We therefore are unable to conclude that the missing evidence was material.

The second *Asherman* factor requires consideration of "the likelihood of mistaken interpretation of [the missing evidence] by witnesses or the [trier of fact] . . . ." (Internal quotation marks omitted.) *State* v. *Morales*, supra, 90 Conn. App. 90. "[T]he likelihood of such a mistake [by the jury and witnesses] can be minimized at the trial by permitting testimony on the issue . . . ." (Internal quotation marks omitted.) *State* v. *Jones*, 50 Conn. App. 338, 357, 718 A.2d 470 (1998), cert. denied, 248 Conn. 915, 734 A.2d 568 (1999); see also *State* v. *Gonzalez*, 206 Conn. 213, 225, 537 A.2d 460 (1988).

The jury heard testimony from Greenwood regarding the loss of the booking photograph. Specifically, Greenwood stated that he took the booking photograph of the defendant but failed to ensure that it was sent to the larger database for preservation. Additionally, as noted in the state's brief, defense counsel argued to the jury that, on the basis of the difference between Chappell's testimony and the correctional facility photograph, the jury could have found that Chappell had misidentified the defendant.[5] See *State* v. *Weaver*, supra, 85 Conn. App. 352. Accordingly, we conclude that the second *Asherman* factor does not weigh in favor of the defendant.

The third *Asherman* factor addresses the reasons for the unavailability of the evidence and requires an examination of the motive underlying the loss of the evidence. *State* v. *Morales*, supra, 90 Conn. App. 91. "In examining the motives . . . our courts have considered such factors as whether the destruction was deliberate and intentional rather than negligent . . . or

---

[5] The record does not reveal that defense counsel requested that the court provide the jury with an adverse inference instruction.

done in bad faith or with malice . . . or with reckless disregard . . . or calculated to hinder the defendant's defense, out of other animus or improper motive, or in reckless disregard of the defendant's rights." (Internal quotation marks omitted.) Id. The defendant does not dispute that the loss of the photograph was caused by Greenwood's mistake in failing to transfer the booking photograph to a larger database. The record does not suggest that the state lost the evidence by reason of bad faith or improper motive.

The fourth *Asherman* factor addresses the prejudice caused to the defendant as a result of the failure to maintain the booking photograph. See id. "In measuring the degree of prejudice to an accused caused by the unavailability of the evidence, a proper consideration is the strength or weakness of the state's case, as well as the corresponding strength or weakness of the defendant's case." (Internal quotation marks omitted.) Id.

The police had conducted three undercover drug purchases from apartment 107, where the defendant frequently was present. Chappell testified that he observed the defendant in apartment 107 and then saw him exit the building and enter the green vehicle. Chappell further testified that during the investigation, he had been shown a photograph of the defendant's driver's license and that he had identified the defendant as the individual inside apartment 107, who then exited the apartment and entered the green vehicle. During the search of apartment 107, police discovered cocaine and cash above the ceiling tiles, inositol, a digital scale, plastic bags and rubber bands consistent with the sale of narcotics and a wireless camera system. While the officers were present, an individual arrived at the apartment and attempted to purchase illegal drugs. Further, Delvalle testified that she had observed the defendant measure, package and sell cocaine from apartment 107. Delvalle also witnessed the defendant place an item in the ceiling

tiles on the day of the defendant's arrest in the same location where the officers later recovered a quantity of cocaine.[6] As a result of the cumulative effect of the evidence presented at trial, we conclude that the fourth *Asherman* factor does not weigh in favor of the defendant. See *State* v. *Morales*, supra, 232 Conn. 727 ("if the evidence would have been merely cumulative or would have failed to rebut evidence that was already available, the defendant may have suffered little preju-. dice, and his right to due process of law under article first, § 8, of the Connecticut constitution may not have been violated").

Having applied the *Asherman* factors, we determine that the defendant has failed to establish that the loss of the booking photograph deprived him of his state constitutional right to due process. As such, his claim fails under the third prong of *Golding*.

## II

The defendant next claims that the sentence imposed violated the prohibition against double jeopardy. Specifically, he argues that the court improperly merged the sentences, rather than the conviction on the counts of possession of a narcotic substance with intent to sell by a person who is not drug-dependent and possession of a narcotic substance with intent to sell. We agree with the defendant.

The following additional facts are necessary for the resolution of the defendant's claim. As noted previously, the defendant was convicted of possession of a narcotic substance with intent to sell by a person who is not

---

[6] Although the defendant argues that Delvalle was not a credible witness because of the favorable treatment she received from the state in exchange for her testimony, we note that this information was presented to the jury during the evidentiary phase of the trial. Additionally, the court provided the jury with an instruction regarding the credibility of informant testimony.

drug-dependent in violation of § 21a-278 (b) and possession of a narcotic substance with intent to sell in violation of § 21a-277 (a). During sentencing, the court stated: "Count one, possession with intent to sell cocaine by a [person who is not drug-dependent], ten years to serve, five years of which are mandatory, ten years special parole. Second count, possession with intent to sell cocaine, ten years to serve. Those are concurrent and as a matter of law should be merged with sentencing."[7]

On appeal, the defendant argues that the sentence imposed by the court violates the federal constitutional prohibition against double jeopardy, specifically, the protection against multiple punishments for the same offense. See U.S. Const., amend. V. Specifically, he claims that because possession of a narcotic substance with intent to sell under § 21a-277 (a) is a lesser offense included within the crime of possession of a narcotic substance with intent to sell by a person who is not drug-dependent under § 21a-278 (b), and, because both charges arose from the same act or transaction, the sentence for possession with intent to sell must be vacated. The defendant concedes that this claim is unpreserved and requests review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. We agree that this claim warrants *Golding* review. See *State* v. *Mullins*, 288 Conn. 345, 377–78, 952 A.2d 784 (2008).

"The federal and state constitutions prohibit multiple punishments if: (1) the charges arise out of the same act or transaction; and (2) the charged crimes are the same offense. *State* v. *Chicano*, 216 Conn. 699, 706, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991). [W]here the same act

---

[7] We note that the judgment file indicates that the defendant was convicted on both narcotics charges and received concurrent sentences with respect to those charges.

or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). Only the relevant statutes, charging documents and bill of particulars are used to evaluate this test, not the evidence presented at trial." (Internal quotation marks omitted.) *State* v. *Mullins*, supra, 288 Conn. 378.

In the present case, both narcotics charges arose from the same act or transaction. The information charging the defendant with both crimes alleged that the crimes were committed on the same day, in the same location and with the same narcotic. The information alleged "that on or about the twenty-second day of April, 2008, in the town of Willimantic . . . [the defendant] did possess with the intent to sell a narcotic substance . . . ." Further, it is well established that possession of narcotics with intent to sell is a lesser offense included within the crime of possession of narcotics with intent to sell by a person who is not drug-dependent. *State* v. *Bradley*, 60 Conn. App. 534, 545, 760 A.2d 520, cert. denied, 255 Conn. 921, 763 A.2d 1042 (2000); see also *State* v. *Hammond*, 257 Conn. 610, 613, 778 A.2d 108 (2001). In other words, it is not possible to commit the crime of possession of a narcotic substance with intent to sell by a person who is not drug-dependent without first committing the crime of possession of a narcotic substance with intent to sell.

Our Supreme Court has instructed that "[t]he remedy when a defendant has been sentenced for both a greater and lesser included offense is to merge the conviction for the lesser included offense with the conviction for the greater offense and to vacate the sentence for the lesser included offense." *State* v. *Mullins*, supra, 288 Conn. 379. Accordingly, the defendant's conviction of

possession of a narcotic substance with intent to sell in violation of § 21a-277 (a) must be combined with his conviction of possession of a narcotic substance with intent to sell by a person who is not drug-dependent in violation of § 21a-278 (b), and his sentence for possession of narcotics with intent to sell must be vacated.[8]

The judgment is reversed in part and the case is remanded with direction to merge the conviction of possession of narcotics with intent to sell with the conviction of possession of narcotics with intent to sell by a person who is not drug-dependent and to vacate the sentence on the conviction of possession with intent to sell. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[8] On the basis of this controlling precedent from our Supreme Court, we need not discuss the defendant's alternate argument that his conviction on the lesser included offense must be vacated.