# STATE OF CONNECTICUT *v.* SOLOMON WHITE
## (AC 32056)

DiPentima, C. J., and Bear and Schaller, Js.

Argued November 30, 2010—officially released April 12, 2011

 ██

 

*Neal Cone*, senior assistant public defender, for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Donna Mambrino*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BEAR, J. The defendant, Solomon White, appeals from the judgment of conviction, rendered after a trial by jury, of murder in violation of General Statutes § 53a-54a, criminal use of a firearm in violation of General Statutes § 53a-216 (a), tampering with a witness in violation of General Statutes § 53a-151 (a), conspiracy to commit tampering with a witness in violation of General Statutes §§ 53a-48 and 53a-151 (a), bribery of a witness in violation of General Statutes § 53a-149 (a), and conspiracy to commit bribery of a witness in violation of General Statutes §§ 53a-48 and 53a-149 (a). On appeal, the defendant claims that (1) the evidence was insufficient to sustain a conviction for an intentional homicide and (2) a jury instruction that referenced the defendant's interest in the outcome of the case was improper. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On Saturday, August 27, 2005, a local church sponsored a "Stop the Violence" block party on Vine Street in Hartford. Both the defendant and Keith Carter, the victim, attended the block party, where they argued. After the block party, several people went to an apartment building located at 46-48 Vine Street. The defendant lived in an apartment on the first floor of 46-48 Vine Street with his girlfriend, Latasha Drummond.

Shortly after 9:15 p.m. that evening, several people were gathered in the common hallway on the first floor of 46-48 Vine Street. Drummond was in the apartment she shared with the defendant. Drummond heard someone tell the victim to "get out of [the defendant's] face." A neighbor, Dela Tindal, was in her apartment located across the hall from the apartment shared by the defendant and Drummond. Tindal heard the defendant and the victim arguing in the hallway. Tindal then heard the defendant say, "are you still talkin' shit? Don't make me go get my pistol," and then Tindal heard the defendant's apartment door open and close. Shortly thereafter, Tindal heard the defendant say: "You still talking shit." Tindal then looked out of her apartment and saw the two men arguing, standing face to face. Tindal then saw the defendant extend his hand and shoot the victim. Tindal could see sparks coming from the barrel of the gun, and the sound was "like a . . . loud firecracker." Upon hearing the gunshot, Drummond looked out into the hallway where she saw the victim fall to the floor and the defendant with a gun in his hand. The defendant then ran out of the building. Drummond went back inside her apartment to get her keys and then ran out of the building.

Outside of the building, Drummond encountered her neighbor, Courtney Croome. Drummond was crying and shaking and told Croome, "He killed him. He killed him."[1]

Following the incident, Drummond visited the defendant at an abandoned apartment where he was hiding from the police. Drummond saw the defendant wrap

---

[1] When Croome encountered Drummond running away from 46-48 Vine Street, Drummond was crying and screaming. Croome asked Drummond what was wrong, and Drummond replied, "oh, my God, oh, my God. I can't believe he did it. I can't believe he did. He shot him. He shot him." Croome then asked Drummond who she was talking about, and Drummond replied, "Solomon."

the gun he had used to shoot the victim in a diaper and throw it in the trash, claiming that the police could not charge him if they did not have the murder weapon. Drummond described the weapon as a "black, old, rusty gun."

The defendant was located and arrested approximately one month following the incident. While in prison, the defendant wrote three letters to Tindal, asking that she not appear at his probable cause hearing, that she lie to the police and that she ask others to lie for him.

Following a jury trial, the defendant was convicted of all the charges against him and sentenced to serve a term of sixty years imprisonment. Additional facts will be set forth as necessary.

I

On appeal, the defendant claims that the state presented insufficient evidence regarding his intent to cause death, and, therefore, the evidence was insufficient to support a conviction for murder pursuant to § 53a-54a. We disagree.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Ledbetter*, 275 Conn. 534, 542, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006).

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Citation omitted.) *State* v. *Pinnock*, 220 Conn. 765, 771, 601 A.2d 521 (1992).

Moreover, "it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Citation omitted; internal quotation marks omitted.) *State* v. *McMahon*, 257 Conn. 544, 566–67, 778 A.2d 847 (2001), cert. denied, 534 U.S. 1130, 122 S. Ct. 1069, 151 L. Ed. 2d 972 (2002).

Furthermore, "proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal." (Citations omitted.) *State* v. *DeJesus*, 236 Conn. 189, 196, 672 A.2d 488 (1996). "On appeal, we do not ask whether there is a reasonable view of the evidence that would support a

reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." *State* v. *Sivri*, 231 Conn. 115, 134, 646 A.2d 169 (1994).[2] "We do not sit as a thirteenth juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record." (Internal quotation marks omitted.) *State* v. *Henning*, 220 Conn. 417, 420, 599 A.2d 1065 (1991). "Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . Our review of factual determinations is limited to whether those findings are clearly erroneous. . . . We must defer to the [finder] of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Osoria*, 86 Conn. App. 507, 514–15, 861 A.2d 1207 (2004), cert. denied, 273 Conn. 910, 870 A.2d 1082 (2005). "The process of inference is peculiarly a jury function, the raison d'etre of the jury system." (Internal quotation marks omitted.) *State* v. *Little*, 194 Conn. 665, 673, 485 A.2d 913 (1984).

Section 53a-54a (a) provides in relevant part that "[a] person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ." "The specific intent to kill is an essential element of the crime of murder." *State* v. *Sivri*,

---

[2] The defendant argues that we should consider both countervailing evidence and evidence that supports the verdict in assessing a sufficiency of the evidence claim. With respect to this issue, this court previously has stated: "Our Supreme Court has been very clear concerning the standard to be employed in assessing a sufficiency of the evidence claim on appeal. . . . Should the defendant believe that this standard is improper, her redress is with our Supreme Court, as we are bound by the precedent it sets." (Citations omitted.) *State* v. *Varela*, 115 Conn. App. 531, 540 n.3, 973 A.2d 156, cert. denied, 294 Conn. 913, 983 A.2d 852 (2009).

supra, 231 Conn. 126. "To act intentionally, the defendant must have had the conscious objective to cause the death of the victim." (Internal quotation marks omitted.) *State* v. *Aviles*, 107 Conn. App. 209, 217, 944 A.2d 994, cert. denied, 287 Conn. 922, 951 A.2d 570 (2008); see also General Statutes § 53a-3 (11). "Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . This does not require that each subordinate conclusion established by or inferred from evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a jury's factual inferences that support a guilty verdict need only be reasonable." (Citations omitted; internal quotation marks omitted.) *State* v. *Sivri*, supra, 126. "Nevertheless, because intent to cause the death of a person is an element of the crime . . . that intent must be proven beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Tomasko*, 238 Conn. 253, 258, 681 A.2d 922 (1996). "An intent to cause death may be inferred from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to and immediately following the death." *State* v. *Zdanis*, 182 Conn. 388, 396, 438 A.2d 696 (1980), cert. denied, 450 U.S. 1003, 101 S. Ct. 1715, 68 L. Ed. 2d 207 (1981).

The defendant's contention on appeal is that, on the basis of the evidence presented, it is equally likely that the victim's death resulted from an accidental shooting when the defendant attempted to "pistol-whip" the victim. We conclude that there was sufficient evidence for the jury to have found beyond a reasonable doubt that

the defendant had the specific intent to cause the victim's death.

To support the theory of an accidental discharge, the defendant first cites the testimony of Drummond, who stated that (1) the defendant told her the shooting was an accident and that he was going to strike the victim with the gun when it accidentally discharged,[3] and (2) the gun was "rusty." The defendant argues that a rusty firearm may not shoot properly and cites newspaper articles and case law from other jurisdictions to support the theory that pistol-whipping incidents are notorious for accidental discharges. The defendant also argues that the testimony of the medical examiner who performed the autopsy of the victim supports an accidental discharge theory,[4] noting that the victim died of a single bullet wound and that there was stippling on the victim's left shoulder. The defendant argues that the presence of stippling suggests that that the gunshot was fired from close range. The victim also had a laceration on the inner lip and a missing tooth, which the defendant hypothesizes could have been caused by a punch.[5]

We conclude that there was sufficient evidence presented to the jury that the defendant had the specific intent necessary to support a conviction for murder pursuant to § 53a-54a. There was testimony, which the

[3] Drummond testified that the defendant told her that he did not mean to shoot the victim but that he had attempted to hit the victim with the gun and the gun discharged.

[4] The defendant, against the advice of counsel, testified at trial. He stated the following. He was at 46-48 Vine Street when the victim was shot but not in the vicinity of the shooting. The defendant said that, after hearing a gunshot, he ran out of the building with several other people. He did not learn the identity of the victim until Drummond told him. The defendant said that he learned he was wanted in connection with the shooting when he saw a news story on television several days later. The defendant also denied owning a gun at that particular period in time. His testimony at trial did not include his "accidental discharge" theory.

[5] The medical examiner testified that such an injury also could be caused by an endotracheal tube.

jury could have credited, to support the conclusion that the defendant intended to cause the victim's death. The jury could have inferred from the evidence that, because the defendant and the victim were arguing during most of the day prior to the shooting, the defendant had the requisite intent to cause the victim's death. See *State v. Edwards*, 247 Conn. 318, 322, 721 A.2d 519 (1998) (arguments between a defendant and a victim can be evidence that defendant intended to cause victim's death). Furthermore, during the continuing argument, and shortly before the shooting, the defendant stated that he was going to get his gun. The defendant went to his apartment, obtained the gun, returned to the hallway and confronted the victim with his gun. The jury also could have inferred from this evidence that the defendant intended to cause the victim's death. See *State v. Raguseo*, 225 Conn. 114, 120, 622 A.2d 519 (1993) (defendant carrying deadly weapon prior to homicide can be evidence that defendant intended to cause victim's death). There was testimony that the defendant remarked, "You still talking shit," then extended his hand and shot the victim in the neck from close range. One who "uses a deadly weapon upon a vital part of another will be deemed to have intended the probable result of that act, and from such a circumstance a proper inference may be drawn in some cases that there was an intent to kill." (Internal quotation marks omitted.) *State v. Tomasko*, supra, 238 Conn. 259.

The jury also was free to infer that the defendant's flight from the scene after the shooting[6] and subsequent evasion of the police demonstrated consciousness of guilt and supported the conclusion that he intended to cause the death of the victim. See *State v. Booth*, 250

---

[6] Although the defendant on appeal advances his accidental discharge theory, there was no evidence that after the shooting occurred he remained at the scene to aid the victim or called for or asked others to call for medical assistance. See *State v. Tomasko*, supra, 238 Conn. 259.

Conn. 611, 653, 737 A.2d 404 (1999) ("when a person flees the crime scene with other participants in a crime, it is reasonable to infer that that person had the intent to murder"), cert. denied sub nom. *Brown* v. *Connecticut*, 529 U.S. 1060, 120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000). Additionally, the jury could reasonably have found from the evidence that the defendant disposed of the murder weapon and sought to influence the testimony of witnesses in the case.

Mindful of our standard of review, which requires us to view the evidence in the light most favorable to sustaining the jury's verdict, we reject the defendant's claim and conclude that the evidence was sufficient to sustain a conviction for murder.

II

The defendant also claims that the court erred in instructing the jury on the credibility of witnesses by indicating that the defendant's interest in the outcome of the case could be considered in evaluating his testimony.[7] The defendant claims that the instruction undermined the presumption of innocence and his rights under the federal and state constitutions to a fair trial and to testify in his own defense. The defendant seeks review of his unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[8]

---

[7] The court instructed the jury, in relevant part: "Now, the accused, [the defendant], took the [witness] stand in this case and testified. In weighing the testimony of an accused person, you should apply the same principles by which the testimony of other witnesses is tested. And that necessarily involves a consideration of [the defendant's] interest in the outcome of the case. You will consider the importance to him of the outcome of the trial. An accused person, having taken the witness stand, stands before you, then, just like any other witness and is entitled [to] the same consideration and must have his testimony measured in the same way as any other witness, including his interest in the verdict, which you're about to render."

[8] *Golding* holds that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived

The defendant's claim is reviewable under *Golding* because the record is adequate for review and the claim is of constitutional magnitude. See *State* v. *Polanco*, 126 Conn. App. 323, 331, 11 A.3d 188 (2011).[9]

"[A] charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Arroyo*, 292 Conn. 558, 566, 973 A.2d 1254 (2009), cert. denied, 559 U.S. 911, 130 S. Ct. 1296, 175 L. Ed. 2d 1086 (2010).

In the present case, the court's charge to the jury was as follows: "Now, the accused, [the defendant],

the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[9] The state argues that the defendant has waived review of this claim because he failed to object to the instruction at trial. We note that the present case was briefed and argued prior to our Supreme Court's decision in *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011), in which it reversed in part *State* v. *Ebron*, 292 Conn. 656, 681–82, 975 A.2d 17 (2009), and concluded that claims of instructional error impliedly are waived "when the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given . . . ." *State* v. *Kitchens*, supra, 482–83. In the present case, we assume without deciding that waiver does not apply because there were no written instructions provided to counsel by the court as required by *Kitchens*. We note, however, that the court did state to counsel that the instruction that it intended to use was set forth in D. Borden & L. Orland, 5 Connecticut Practice Series: Criminal Jury Instructions (4th Ed. 2007) § 3.8.

took the [witness] stand in this case and testified. In weighing the testimony of an accused person, you should apply the same principles by which the testimony of other witnesses is tested. And that necessarily involves a consideration of [the defendant's] interest in the outcome of the case. You will consider the importance to him of the outcome of the trial. An accused person, having taken the witness stand, stands before you, then, just like any other witness and is entitled [to] the same consideration and must have his testimony measured in the same way as any other witness, including his interest in the verdict, which you're about to render."

The instruction in the present case substantively is identical to the instruction in *State* v. *Mann,* 119 Conn. App. 626, 634, 988 A.2d 918, cert. denied, 297 Conn. 922, 998 A.2d 168 (2010).[10] In *Mann,* this court relied on the

---

[10] This court's opinion in *Mann* was released on March 2, 2010, after the filing of the defendant's brief but prior to the filing of the state's brief. The instruction in *Mann* was as follows: "And in this case, the defendant testified. An accused person, having taken the [witness] stand, stands before you just like any other witness. He is entitled to the same considerations and must have his testimony tested and measured by you by the same factors and standards as you would judge the testimony of any other witness. That necessarily involves a consideration of his interest in the verdict that you will render. You have no right to disregard his testimony or to disbelieve his testimony merely because he is accused of a crime. You will consider my earlier instructions on the general subject matter of creditability that obviously pertain to the defendant's testimony as well as the testimony of any other witness." (Internal quotation marks omitted.) *State* v. *Mann,* supra, 119 Conn. App. 634.

At oral argument, appellate counsel for the defendant, who was also appellate counsel for the defendant in *Mann,* attempted to distinguish the present case from *Mann* in that the court also gave an accomplice witness instruction as to Drummond. Counsel argues that the purpose of an "accomplice witness" instruction is to signal to the jury that such testimony is potentially untrustworthy and that coupling an "accomplice witness" instruction with a "testimony of the defendant" instruction invites the jury to view the testimony of the defendant with the same suspicion. We are not persuaded.

precedent in *State* v. *Williams*, 220 Conn. 385, 397, 599 A.2d 1053 (1991), as it was required to do under our law, and concluded that the challenged portion of the court's instruction was not improper for mentioning the defendant's interest in the outcome of the case and that the instruction was "in harmony with those that consistently have been held proper by our courts." *State* v. *Mann*, supra, 637;[11] see also *State* v. *Kendall*, 123 Conn. App. 625, 670, 2 A.3d 990, cert. denied, 299 Conn. 902, 10 A.3d 521 (2010); *State* v. *Smith*, 65 Conn. App. 126, 143–44, 782 A.2d 175 (2001), rev'd on other grounds, 262 Conn. 453, 815 A.2d 1216 (2003).

As an intermediate appellate court, we are bound by the Supreme Court precedent in *Williams* and are unable to modify it. See *State* v. *Smith*, 107 Conn. App. 666, 684–85, 946 A.2d 319, cert. denied, 288 Conn. 902, 952 A.2d 811 (2008). "[W]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions." (Internal quotation marks omitted.) Id. Because the challenged instruction in this case virtually is the same as the challenged instruction in *Mann*, we conclude that it was not improper for the court to mention in its charge the defendant's interest in the outcome of the case. Accordingly, the defendant's claim fails under the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[11] "We note that this court's policy dictates that one panel should not, on its own, [overrule] the ruling of a previous panel. The [overruling] may be accomplished only if the appeal is heard en banc." (Internal quotation marks omitted.) *Diaz* v. *Commissioner of Correction*, 125 Conn. App. 57, 67 n.9, 6 A.3d 213 (2010), cert. denied, 299 Conn. 926, 11 A.3d 150 (2011).