STATE OF CONNECTICUT *v.* DARANTE H.*
(AC 33588)

Robinson, Bear and Espinosa, Js.

---

\* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued September 19—officially released December 11, 2012

*Bradford Buchta*, assistant public defender, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Tatiana A. Messina*, assistant state's attorney, for the appellee (state).

*Opinion*

BEAR, J. The defendant, Darante H., appeals from the judgment of the trial court adjudicating him a youthful offender in violation of General Statutes § 54-76b for having committed the crime of larceny in the sixth degree in violation of General Statutes §§ 53a-119 and 53a-125b. On appeal, the defendant claims that the judgment should be reversed because (1) the court made clearly erroneous factual findings that were critical to the court's adjudication and (2) there was insufficient evidence to support the adjudication. We affirm the judgment of the trial court.

The following facts, which the court found or which are apparent from the record, and procedural history are relevant to this appeal. On October 21, 2010, the defendant and the victim were in a high school ceramics class. The defendant told the victim that his cell phone battery was not functioning properly. Shortly thereafter, the victim left her cell phone on her desk as she stepped away. When the victim returned to her desk, class had ended and her cell phone was missing. The victim reported to the school security officer that her cell phone had been taken. During lunch period, the victim asked the defendant if he knew what had happened to her cell phone; the defendant stated that he did not know. The defendant, however, then gave the victim the subscriber identity module card (SIM card) that had been inside her cell phone.[1]

After the victim's mother picked up the victim and the victim's friend from school, she drove toward the friend's home, which was located near the defendant's home. The victim saw the defendant near his home and identified him to her mother as the person who had taken her cell phone. Her mother stopped, exited the vehicle, asked the defendant about the cell phone and requested that he return it. The victim's mother then called the police, who subsequently arrested the defendant.

The day after his arrest, the defendant informed the school security officer that he had been arrested and that he knew who had possession of the victim's cell

---

[1] "A SIM card . . . is a portable memory chip used in [certain cell] phones. It is a crucial component in mobile telecommunications as it identifies and stores the telephone number and connects the cell phone to the mobile carrier's network. Since SIM cards also have a (limited) memory element, they can also be used as portable stores for one's phone contacts." Techopedia Technology Dictionary, available at http://www.techopedia.com/definition/23747/subscriber-identity-module-card-sim-card (last visited November 29, 2012).

phone. The school security officer approached the student whom the defendant identified, but the student denied taking the cell phone. A few days later, however, the student gave the cell phone to the school security officer, who returned the phone to the victim.

The returned cell phone did not contain the victim's battery or micro secure digital card (SD card).[2] The next day, the school security officer questioned the defendant in the presence of his aunt. The defendant then removed a functioning battery from his cell phone and gave it to the school security officer. The school security officer in turn gave the battery to the victim. He also gave her the missing micro SD card, but the record is silent as to how he obtained that card.

On May 25, 2011, the state charged the defendant by way of a substitute information with being a youthful offender for committing larceny in the sixth degree.[3] A court trial ensued, and, on June 6, 2011, the court adjudicated the defendant a youthful offender for committing larceny in the sixth degree and sentenced the defendant to the custody of the commissioner of correction for thirty days, execution suspended, and one year of probation. This appeal followed. Additional facts will be set forth as necessary.

I

On appeal, the defendant claims that the court's finding of guilt was based on clearly erroneous factual findings and the adverse credibility inferences drawn from

---

[2] An SD card provides "a non-volatile form of flash memory for portable and mobile devices." Techopedia Technology Dictionary, available at http://www.techopedia.com/definition/2808/secure-digital-card-sd-card (last visited November 29, 2012).

[3] The state also charged the defendant with being a youthful offender for committing the crimes of interfering with an officer and disorderly conduct. The defendant filed a motion for a judgment of acquittal as to the disorderly conduct and larceny in the sixth degree charges. At the close of the defendant's case, the court granted the defendant's motion as to the disorderly conduct charge but denied the motion as to the larceny in the sixth degree

those findings. Specifically, the defendant argues that the court erred in finding that (1) the cell phone "materialize[d] without a battery," (2) there was conflicting testimony regarding the defendant's original battery, (3) there was conflicting testimony regarding the number of batteries and (4) there was no need for the defendant's grandmother to have purchased another battery for the defendant. The state argues that the court's factual findings were not clearly erroneous because each factual finding challenged by the defendant is supported by evidence in the record.[4]

"The law governing [our] limited appellate review is clear. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Lawrence*, 282 Conn. 141, 154–55, 920 A.2d 236 (2007).

A

The defendant claims that the court's finding that the cell phone "materialize[d] without a battery" is clearly

charge. At the conclusion of the trial, the court found the defendant not guilty of being a youthful offender by way of interfering with an officer.

[4] Alternatively, the state argues that the defendant failed to establish that any clearly erroneous factual findings by the court were harmful, i.e., that any such erroneous factual finding would undermine confidence in the defendant's conviction. We do not reach the state's alternative argument because we conclude that the court's factual findings were not clearly erroneous.

erroneous. The defendant argues that the court erred in making such a finding when "it was essentially undisputed that the phone, including the battery, was . . . returned to the [victim]." The defendant further argues that this erroneous finding adversely affected the court's assessment of the evidence in that it prevented the court from considering whether the battery in the cell phone returned to the victim was the original battery from her phone. He further argues that this finding suggests that the court misunderstood the actual number of batteries at issue, which "could have impacted [the court's] understanding of the other testimony presented by the defense regarding the defendant's battery." The state argues that the court's finding that the cell phone was returned without a battery was merely a technically imprecise use of language. Specifically, the state argues that the court merely was making an inference that the victim's cell phone, when returned, contained a battery other than her original battery and that such an inference is supported by the evidence. We agree with the state.

The record reveals that two witnesses testified as to whether the cell phone contained a battery when it was returned to the victim. First, the victim testified as follows regarding the condition of her cell phone when it was returned to her:

"Q. And so, after you got your phone back, was the phone okay? Was there anything wrong with it?

"A. The battery was messed up in the back and my SIM [card] and my chip was missing. . . .

"Q. So, it was not your battery that you had originally installed?

"A. No."

Also, the school security officer testified as follows as to whether the cell phone had a battery when it was given to him, before he returned it to the victim:

"Q. Did [the victim's cell phone] have a battery when [the student] gave it to you?

"A. I'm not sure if it had a battery or not. I believe so."

On the basis of this testimony, the court reasonably could have found that the battery in the victim's cell phone, when it was returned to her, was a defective battery, different from the battery that was in the phone at the time it was taken. The court, therefore, reasonably could have concluded that the victim's cell phone did not contain her original functioning battery and that she effectively was left with no battery. We agree with the state that the court's statement that the cell phone "materialize[d] without a battery" reasonably can be understood to relate to the defective nature of the battery that was present when the cell phone was returned to the victim. See *Werblood* v. *Birnbach*, 41 Conn. App. 728, 733, 678 A.2d 1 (1996) (court's misstatement of child being able to attend same school for next four years interpreted as child being able to attend school in same school district for next four years).

B

The defendant claims that the court erred in finding that there was conflicting testimony regarding his original cell phone battery. The defendant argues that his testimony and his aunt's testimony demonstrate that his original cell phone battery did not work. The defendant further argues that this testimony is consistent with the victim's testimony that the defendant told her that his cell phone battery did not work. The state argues that this was not the only testimony regarding the defendant's cell phone battery and that the evidence supports the court's finding that there was conflicting testimony. We agree with the state.

The following additional facts are relevant to the disposition of this claim. The defendant and his aunt

both testified that the defendant's original cell phone battery did not work. The defendant's aunt also testified that she did not have an opportunity to view the defendant's original defective battery. The defendant, however, testified that he gave his aunt his defective battery and that she disposed of it. The testimony regarding whether the defendant gave his original defective battery to his aunt and whether she disposed of it was in conflict. We conclude, therefore, that the court's finding that there was conflicting testimony regarding the defendant's original cell phone battery is not clearly erroneous.

C

The defendant also claims that the court erred in finding that there was conflicting testimony regarding the number of batteries at issue, not counting the battery in the victim's cell phone when it was taken. The defendant argues that his testimony and his aunt's testimony demonstrate that there were three batteries at issue and that their testimony is logical and consistent. The state argues that the evidence supports the court's finding that there was conflicting testimony regarding the number of batteries. We agree with the state.

The defendant and his aunt both testified that the defendant's original cell phone battery did not work, that his aunt bought him a replacement battery, that he gave this replacement battery to the school security officer and that his grandmother bought him a second replacement battery. The defendant's grandmother, however, testified that she was not aware of anyone other than herself buying a replacement battery for the defendant's cell phone.

The defendant's testimony and his aunt's testimony provided a basis for the court to conclude that there were three batteries: the defendant's original defective battery; the battery purchased by the defendant's aunt;

and the battery purchased by the defendant's grandmother. The grandmother's testimony, however, provided a basis for the court to conclude that there were only two batteries: the defendant's original defective battery and the battery that she purchased. On the basis of the testimony of these three witnesses, the court reasonably could have concluded that there was conflicting testimony regarding the number of batteries.

## D

Finally, the defendant claims that the court's factual finding that there was no need for his grandmother to buy a second new battery is clearly erroneous. Our review of the record, however, reveals that the court did not find that there was no need for the grandmother to buy a second battery. Rather, the court found that "there would have been no need for the grandmother to go out and buy another battery if, in fact, the aunt, the guardian, had bought a battery herself." We construe the defendant's claim, therefore, as challenging the court's finding that the defendant's aunt did not buy him a battery.[5] The state argues that the evidence supports the court's finding that the defendant's aunt did not buy the defendant a battery. We agree with the state.

"Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . Our review of factual determinations is limited to whether those findings are clearly erroneous. . . . We must defer to the [finder]

_____

[5] "Neither this court nor our Supreme Court is bound by the issues as framed by the parties in their statement of the issues. Rather, our analysis is addressed to the contents of the brief. . . . Moreover, a review of the case history in this state reveals that, in determining what issues are to be addressed on appeal, it has been the practice to examine the contents of the brief rather than rely on the statement of the issues." (Internal quotation marks omitted.) *State* v. *Miscellaneous Fireworks*, 132 Conn. App. 679, 681 n.1, 34 A.3d 992 (2011).

of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *White*, 127 Conn. App. 846, 851, 17 A.3d 72, cert. denied, 302 Conn. 911, 27 A.3d 371 (2011).

As stated previously in this opinion, the defendant and his aunt testified that the defendant's original battery did not work, that his aunt bought him a replacement battery, that he gave this replacement battery to the school security officer and that his grandmother bought him a second replacement battery. In setting forth its factual findings, the court stated: "[I]f [the defendant] didn't take the battery . . . his phone should have had a battery in it, there would've been no need to buy two additional batteries, even if the phone was taken and the battery, only one additional battery would've been needed because . . . [the defendant] still would've had the battery to his phone. . . . I can't credit any credibility to the aunt's testimony, because there would've been no need for the grandmother to go out and buy another battery if, in fact, the aunt, the guardian, had bought a battery herself." The court also stated: "The bottom line is the court does not credit [the defendant's] testimony as credible." The grandmother, whom the court found to be a credible witness, testified that she was not aware of anyone other than herself buying a replacement battery for the defendant's cell phone. The grandmother also testified that she did not recall when she bought the battery for the defendant's cell phone.

Because the court's finding that the defendant's aunt did not buy him a battery was based on a credibility determination, which we cannot second-guess; see *State* v. *White*, supra, 127 Conn. App. 851; we conclude that the finding is not clearly erroneous.

## II

The defendant next claims that there was insufficient evidence to prove beyond a reasonable doubt that he wrongfully obtained or withheld the victim's cell phone. The defendant argues that certain facts and favorable inferences demonstrate his innocence. The state argues that the cumulative impact of the evidence was more than sufficient to enable the court to find beyond a reasonable doubt that the defendant wrongfully obtained or withheld the victim's cell phone. We agree with the state.

"[T]he [d]ue [p]rocess [c]lause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. . . . The standard of review for a sufficiency of the evidence claim employs a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the [trier] if there is sufficient evidence to support [the] verdict. . . .

"It is axiomatic that the [trier of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the [trier of fact] to conclude that a basic fact or an inferred fact is true, the [trier] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty

of all the elements of the crime charged beyond a reasonable doubt. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [defendant's guilt]." (Citations omitted; internal quotation marks omitted.) *State* v. *Reid*, 123 Conn. App. 383, 391–92, 1 A.3d 1204, cert. denied, 298 Conn. 929, 5 A.3d 490 (2010).

"[I]t does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"[P]roof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal." (Citation omitted; internal quotation marks omitted.) *State* v. *White*, supra, 127 Conn. App. 850.

Section 53a-119 provides in relevant part: "A person commits larceny when, with the intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."[6]

---

[6] General Statutes § 53a-125b (a) provides in relevant part: "A person is guilty of larceny in the sixth degree when he commits larceny as defined in section 53a-119 and the value of the property or service is five hundred dollars or less." The court found that the cell phone had a value and that

In the present case, the court, acting as the trier of fact, found the following relevant facts on the basis of the testimony presented to the court over the course of the two day trial. The defendant informed the victim that his battery was not functioning properly during their ceramics class and, shortly thereafter, the victim's cell phone was taken. Later that day, the defendant gave the victim the SIM card for her cell phone. On the basis of these findings, the court reasonably could have inferred that the defendant had a criminal connection to the victim's cell phone. See *State* v. *Rivera*, 39 Conn. App. 96, 104, 664 A.2d 306 ("possession of recently stolen property raises a permissible inference of criminal connection with the property" [internal quotation marks omitted]), cert. denied, 235 Conn. 921, 665 A.2d 908 (1995). The court also found that the school security officer obtained the victim's cell phone from another student, but the battery in the cell phone was not its original functioning battery. The school security officer then questioned the defendant about the battery, and the defendant provided him with a functioning battery, which he took from his cell phone, that the victim identified as her cell phone's original battery.

Although the defendant and his aunt testified that the battery the defendant handed over was a replacement battery that she had purchased for the defendant, the court found that this testimony was not credible and concluded that the defendant's aunt did not purchase a replacement battery for him. The court credited the grandmother's testimony that she purchased a replacement battery for the defendant. The court reasonably could have inferred from this testimony that the grandmother purchased this replacement battery after the defendant returned the victim's battery, which had been

the battery was valued at thirty-five dollars. The defendant does not challenge those findings on appeal.

in the victim's cell phone when it was taken, to the school security officer.

The court concluded that the credible testimony given and the inferences drawn from this testimony demonstrated that the defendant had a defective battery; the victim's cell phone was taken; the defendant gave the victim the SIM card to her cell phone; the victim's cell phone was returned to her with a defective battery; and, then the defendant gave the school security officer a functioning battery that the victim identified as her cell phone's original battery. The court stated that on the basis of the evidence, it found beyond a reasonable doubt that the defendant wrongfully obtained or withheld the victim's cell phone.

Mindful of our standard of review, we conclude that on the basis of the evidence presented and the reasonable inferences drawn therefrom, the court reasonably could have concluded that the evidence was sufficient to prove beyond a reasonable doubt that the defendant wrongfully obtained or withheld the victim's cell phone.

The judgment is affirmed.

In this opinion the other judges concurred.